## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KENNETH MCQUEEN, on behalf of himself and all others similarly situated, | Case No. 2:24-cv-00725-GEKP |
| Plaintiff, | Judge Gene E.K. Pratter |
| v. | |
| PRIMARY ARMS, LLC, | |
| Defendant. | |

### DEFENDANT PRIMARY ARMS, LLC'S
### MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Primary Arms, LLC ("Defendant" or "PA"), by and through its undersigned counsel, respectfully requests that this Court grant its motion to dismiss Plaintiff Kenneth McQueen's ("Plaintiff") Class Action Complaint ("Complaint") for failure to show that personal jurisdiction exists over PA pursuant to Rule 12(b)(2); failure to allege an injury to support Article III standing pursuant to Rule 12(b)(1); and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).  PA also requests that the Court dismiss this case pursuant to Rule 12(b)(3) or transfer the action pursuant to 28 U.S.C. §§ 1404 or 1406 to U.S. District Court for the Southern District of Texas.

First, Plaintiff fails to show that this Court has personal jurisdiction over PA.  PA is neither formed in Pennsylvania nor does it maintain its principal place of business in Pennsylvania.  Thus, there is no general jurisdiction over PA in this state.  Further, it is well-settled that a company's operation of a nationally accessible website—the sole basis for Plaintiff's claim—does not, by itself, subject the company to personal jurisdiction throughout the country.

Second, and relatedly, the Court should dismiss this action under Rule 12(b)(3) because venue is improper in this District under 28 U.S.C. § 1391. Alternatively, the Court should transfer this action to U.S. District Court for the Southern District of Texas under either § 1406 (if venue is improper) or § 1404 (if venue is proper) pursuant to a valid and enforceable forum-selection clause.

Third, Plaintiff fails to allege that this Court has subject matter jurisdiction over this matter because he does not allege that PA caused him a concrete injury-in-fact that would meet the requirements for Article III standing, including under this Court's recent analysis in *In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping*, MDL 3074, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023). Rule 12(b)(1) mandates dismissal in such circumstances.

Finally, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff alleges two claims: (1) a claim for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA") and (2) a claim for violation of Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa. Cons. Stat. § 6111(i). But his allegations do not meet the elements to show violations of either statute. Plaintiff cannot show that Defendant used a "device" to intercept the "contents" of an "electronic communication," as those terms are defined in WESCA. Even if he could (he cannot), Plaintiff consented to the communication, either through PA's website terms, which explicitly disclose that PA operates its website with the help and assistance of other third parties, or because the third party contractor with whom Plaintiff was communicating was effectively an "agent" or extension of PA itself. Plaintiff also does not allege facts to state a claim for violation of the UFA § 6111(i) because Plaintiff consented to any disclosure of his "gun purchase" information to Listrak and because PA

did not close any information it was not authorized to disclose.  Accordingly, the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6).

WHEREFORE, Defendants respectfully request that the Court dismiss Plaintiff's action in its entirety, with prejudice, pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(1) and/or 12(b)(6).  If the Court finds dismissal is improper under 12(b)(3) for improper venue, it should nevertheless transfer this action to U.S. District Court for the Southern District of Texas.

Dated: May 1, 2024                                   Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Sarah A. Ballard*
Sarah A. Ballard (PA Bar No. 327879)
1801 California Street, Suite 4400
Denver, CO  80202
Tel.: (303) 861-0600
Email: sballard@bakerlaw.com

Matthew D. Pearson (*pro hac vice*
forthcoming)
600 Anton Boulevard, Suite 900
Costa Mesa, CA  92626
Tel: (714) 754-6600
Email: mpearson@bakerlaw.com

*Counsel for Defendant Primary Arms, LLC*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KENNETH MCQUEEN, on behalf of himself and all others similarly situated, | Case No. 2:24-cv-00725-GEKP |
| Plaintiff, | Judge Gene E.K. Pratter |
| v. | |
| PRIMARY ARMS, LLC, | |
| Defendant. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PRIMARY ARMS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**BAKER & HOSTETLER LLP**

Sarah A. Ballard (PA Bar No. 327879)
1801 California Street, Suite 4400
Denver, CO  80202
Tel.: (303) 861-0600
Email: sballard@bakerlaw.com

Matthew D. Pearson (*pro hac vice* forthcoming)
600 Anton Boulevard, Suite 900
Costa Mesa, CA  92626
Tel: (714) 754-6600
Email: mpearson@bakerlaw.com

*Counsel for Defendant Primary Arms, LLC*

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.    PLAINTIFF'S ALLEGATIONS AND MATERIAL FACTS .................................3

III.    LEGAL STANDARDS ........................................................................................5

IV.    ARGUMENT ......................................................................................................7

    A.    The Court Does Not Have Personal Jurisdiction Over PA. ......................7

        1.    PA is not subject to general jurisdiction in Pennsylvania. ...........8

        2.    This Court does not have specific jurisdiction over PA. ...........9

            i.    Plaintiff fails to allege that PA's allegedly tortious conduct was "expressly aimed" at Pennsylvania.........................................10

            ii.    Plaintiff fails to allege that PA "knew" Plaintiff would suffer harm in Pennsylvania.....................................................16

    B.    Dismissal or Transfer To The Southern District of Texas Is Required Whether Or Not Venue Is Proper In This District. .................................17

        1.    Dismissal or transfer to the Southern District of Texas is appropriate under either 28 U.S.C. §§ 1406 or 1404. ...................................17

        2.    The parties' forum-selection clause should be enforced...........................18

            i.    The forum-selection clause is valid and enforceable. ...................19

            ii.    Extraordinary circumstances do not weigh against enforcement of the forum-selection clause under § 1404(a). ........24

    C.    Plaintiff's Complaint Should Be Dismissed For Lack of Standing Because Plaintiff Fails to Plead A Cognizable "Injury-In-Fact." .........................26

    D.    Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted. .............31

        1.    Plaintiff's claim for violation of WESCA should be dismissed. ...............31

            i.    Plaintiff fails to allege interception of the "contents" of an "electronic communication." ........................................................32

            ii.    Listrak code is not a "device.".....................................................35

            iii.    Plaintiff's WESCA claim should be dismissed because he consented to the conduct at issue. ....................................................36

            iv.    Plaintiff's WESCA claim should be dismissed because no violation of WESCA occurred because Listrak was an "agent" or extension of PA. ......................................................................37

        2.    Plaintiff's claim for violation of the UFA should be dismissed. ...............40

V.    CONCLUSION....................................................................................................41

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adossari ex rel. Adossari v. Ripp,*
49 F.4th 236 (3d Cir. 2022) ...................................................................................7

*Air Canada & Aeroplan Inc. v. LocalHost LLC,*
C.A. No. 23-1177-GBW, 2024 WL 1251286 (D. Del. Mar. 14, 2024) ................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................6, 7

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.,*
571 U.S. 49 (2013) ................................................................................18, 24

*Azer Sci. Inc. v. Quidel Corp.,*
Civil No. 5:21-cv-02972-JMG, 2021 WL 5918655 (E.D. Pa. Dec. 15, 2021) .......................18

*Ballentine v. United States,*
486 F.3d 806 (3d Cir. 2007) ......................................................................6

*Barclift v. Keystone Credit Servs., LLC,*
93 F.4th 136 (3d Cir. 2024) ................................................................26, 28, 29

*BGSD, Inc. v. SpazeUp, LLC,*
No. 5:23-cv-4855, 2024 WL 1619279 (E.D. Pa. Apr. 15, 2024).................................8

*Bockman v. First Am. Mktg. Corp.,*
459 F. App'x 157 (3d Cir. 2012) ................................................................6

*In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping,*
MDL 3074, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023)................................ *passim*

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997) ......................................................................6

*Burns v. SeaWorld Parks & Entm't, Inc.,*
675 F. Supp. 3d 532 (E.D. Pa. 2023) .......................................................7

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011) ......................................................................33

*Byars v. Hot Topic, Inc.,*
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...................................................38

*C.H. Robinson Co., Inc. v. MSC Mediterranean Shipping Co., S.A.,*
CIVIL ACTION NO. 2:23-cv-01748-MRP, 2024 WL 1363496 (E.D. Pa. Mar.
29, 2024)................................................................19, 23

*M.H. & J.H., ex rel. C.H. v. Omegle.com LLC,*
No. 20-11294, 2021 WL 1050234 (D.N.J. Mar. 19, 2021) ...................................13

*Calder v. Jones,*
465 U.S. 783 (1984)................................................................ *passim*

iii

*Castle Cheese, Inc. v. MS Produce, Inc.*,
    No. CIV.A 04-878, 2008 WL 4372856 (W.D. Pa. Sept. 19, 2008) ......................................37

*Castle Co-Packers, LLC v. Busch Mach., Inc.*,
    Civil Action No. 23-459, 2023 WL 5337167 (W.D. Pa. Aug. 18, 2023) ..............................25

*Chant Eng'g Co. Inc. v. Cumberland Sales Co.*,
    CIVIL ACTION NO. 20-4559, 2021 WL 848062 (E.D. Pa. Mar. 5, 2021)............9, 10, 11, 12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ...........................................................................................................6

*Collins v. Mary Kay, Inc.*,
    874 F.3d 176 (3d Cir. 2017)..............................................................................................22

*Commonwealth v. Byrd*,
    235 A.3d 311 (Pa. 2020) ...................................................................................................35

*Cook v. GameStop, Inc.*,
    2:22-cv-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)...............................13, 30, 32, 33

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994).................................................................................................17

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023)..............................................................................33

*Crowley v. CyberSource Corp.*,
    166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................................35

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...........................................................................................................8

*Dayhoff Inc. v. H.J. Heinz Co.*,
    86 F.3d 1287 (3d Cir. 1996).................................................................................................5

*Doe v. Franklin Cty.*,
    139 A.3d 296 (Pa. Commw. Ct. 2016) ..............................................................................40

*D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009)................................................................................................13

*Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ..............................................................................32

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ...........................................................................23, 25

*Finn v. Great Plains Lending, LLC*,
    CIVIL ACTION No. 15-4658, 2016 WL 705242 (E.D. Pa. Feb. 23, 2016) ...........................8

*Fischer v. Fed. Express Corp.*,
    42 F.4th 366 (3d Cir. 2022) ................................................................................................8

*Freeman v. Allentown Sch. Dist.*,
    No. 24-cv-0670, 2024 WL 897835 (E.D. Pa. Mar. 1, 2024) ..................................................6

*Fridline v. Integrity Veh. Grp., Inc.*,
  No. 4:23-CV-01194, 2023 WL 7170642 (M.D. Pa. Oct. 31, 2023) ......................................37

*Glendening v. Fair Acres Geriatric Ctr.*,
  Case No. 19-cv-01167-JMY, 2019 WL 5550977 (E.D. Pa. Oct. 28, 2019) ............................20

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...............................................................................32

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
  564 U.S. 915 (2011) ..............................................................................................................8

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
  806 F.3d 125 (3d Cir. 2015) ................................................................................................31

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021) ......................................................................39

*Guidecraft, Inc. v. OJCommerce, LLC*,
  Civil Action No. 2:18-CV-01247, 2019 WL 2373440 (W.D. Pa. May 20,
  2019) ....................................................................................................................................18

*Hasson v. FullStory, Inc.*,
  2:22-cv-1246, 2023 WL 4745961 (W.D. Pa. July 25, 2023)....................................13, 14, 16

*Havassy v. Keller Williams Realty, Inc.*,
  CIVIL ACTION NO. 21-4608, 2024 WL 1640984 (E.D. Pa. Apr. 16, 2024) ....................5, 7

*In re Howmedica Osteonics Corp.*,
  867 F.3d 390 (3d Cir. 2017)..................................................................................................24

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
  No. 07-1029, 2007 WL 4394447 (E.D. Pa. Dec. 13, 2007).....................................................35

*IMO Indus., Inc. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998)...........................................................................................10, 16

*Inters. Corp. v. Enviro, USA, Inc.*,
  Case No. 23-cv-2778-JMY, 2023 WL 6450511 (E.D. Pa. Oct. 2, 2023) ...............................24

*Jacome v. Spirit Airlines Inc.*,
  No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)....................32, 35

*Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*,
  751 F. App'x 293 (3d Cir. 2018) ..........................................................................................33

*Jumara v. St. Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)................................................................................................5, 24

*Kamal v. J. Crew Grp., Inc.*,
  918 F.3d 102 (3d Cir. 2019)..................................................................................................26

*Kidstar v. Facebook, Inc.*,
  Civil Action No. 2:18-cv-13558, 2020 WL 4382279 (D.N.J. July 31, 2020) ........................21

*Kilduff v. Jayco, Inc.*,
  Civil No. 5:23-cv-00470-JMG, 2023 WL 3361187 (E.D. Pa. May 10, 2023) ............17, 18, 24

*Loveland v. Facebook*,
 20-cv-6260-JMY, 2021 WL 1734800 (E.D. Pa. May 3, 2021) ..................................19, 22, 28

*Manning v. Hunt*,
 CIVIL ACTION NO. 18-2470, 2018 WL 11321483 (E.D. Pa. Sept. 18, 2018) ......................5

*Marten v. Godwin*,
 499 F.3d 290 (3d Cir. 2007)...................................................................................................12

*Massie v. Gen. Motors LLC*,
 No. 21-787, 2022 WL 534468 (D. Del. Feb. 17, 2022)..........................................................26

*Massie v. General Motors Co.*,
 No.: 1:20-cv-01560, 2021 WL 2142728 (E.D. Cal. May 26, 2021)..................................14, 15

*Matus v. Premium Nutraceuticals, LLC*,
 715 F. App'x 662 (9th Cir. 2018) .....................................................................................14, 15

*Mayer v. Belichick*,
 605 F.3d 223 (3d Cir. 2010).................................................................................................6, 19

*McLaughlin v. GlaxoSmithKline, L.L.C.*,
 Civil Action No. 12–3272, 2012 WL 4932016 (E.D. Pa. Oct. 17, 2012)..............................25

*Monsanto Co. v. Geertson Seed Farms*,
 561 U.S. 139 (2010)..................................................................................................................6

*Murphy v. Humboldt Clothing Co.*,
 No. 1:20-cv-58, 2021 WL 307541 (W.D. Pa. Jan. 29, 2021) ...........................................12, 13

*Nat'l Expositions, Inc. v. DuBois*,
 605 F. Supp. 1206 (W.D. Pa. 1985).......................................................................................12

*Nutrition Distrib. LLC v. Muscle Store Inc.*,
 2:17-CV-01515-CRE, 2018 WL 3640190 (W.D. Pa. July 10, 2018)......................5, 6, 17, 18

*O'Connor v. Sandy Lane Hotel Co.*,
 496 F.3d 312 (3d Cir. 2007)................................................................................................5, 9

*Oyebanji v. Palmetto Vacation Rentals LLC*,
 Civil No.: 20-cv-8983 (KSH) (CLW), 2021 WL 3732883 (D.N.J. Aug. 20,
 2021) ......................................................................................................................................13

*Pacheco v. Padjan*,
 CIVIL ACTION No. 16-3625, 2017 WL 3217160 (E.D. Pa. July 28, 2017).........................11

*Pentecostal Temple Church v. Streaming Faith, LLC*,
 Civil Action No. 08-554, 2008 WL 4279842 (W.D. Pa. Sept. 16, 2008)...............................19

*Polytek Dev. Corp. v. 'Doc' Johnson Enters.*,
 532 F. Supp. 3d 243 (E.D. Pa. 2021) ....................................................................................35

*Popa v. Harriet Carter Gifts, Inc.*,
 426 F. Supp. 3d 108 (W.D. Pa. 2019).................................................................31, 34, 35, 36

*Popa v. Harriet Carter Gifts, Inc.*,
 52 F.4th 121 (3d Cir. 2022) ...............................................................................31, 34, 35, 36

*Potter v. Havlicek*,
    No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio Jun. 23, 2008)..........................35

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*,
    819 F.2d 434 (3d Cir. 1987)...............................................................................5

*Redi-Data v. Spamhaus Project*,
    Case No. 20-cv-17484, 2022 WL 3040949 (D.N.J. Aug. 2, 2022) .......................16

*Reichard v. United of Omaha Life Ins. Co.*,
    331 F. Supp. 3d 435 (E.D. Pa. 2018) ...................................................................37

*Remick v. Manfredy*,
    238 F.3d 248 (3d Cir. 2001)............................................................................9, 16

*Robinson v. Fam. Dollar Inc*,
    679 F. App'x 126 (3d Cir. 2017) .........................................................................33

*Rocke v. Pebble Beach Co.*,
    541 F. App'x 208 (3d Cir. 2013) .........................................................................14

*Rogers v. Smith Volkswagen, LTD*,
    CIVIL ACTION No. 19-2567, 2020 WL 1676400 (E.D. Pa. Apr. 6, 2020) ...........17

*Rubin v. Mangan*,
    CIVIL ACTION No. 19-5301, 2021 WL 617662 (E.D. Pa. Feb. 17, 2021) ............6

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)............................................................................................7

*Schwartz v. Comcast Corp.*,
    256 F. App'x 515 (3d Cir. 2007) .........................................................................19

*Smidga v. Spirit Airlines, Inc.*,
    2:22-cv-1578-MJH, 2:23-cv-00784-MJH, 2:23-cv-00895-MJH, 2024 WL
    1485853 (W.D. Pa. Apr. 5, 2024) .......................................................................30

*Smith v. Facebook*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................14

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)...........................................................................................26

*Star Buick GMC v. Century Grp.*,
    541 F. Supp. 3d 582 (E.D. Pa. 2021) ..................................................................19

*Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    220 F. Supp. 3d 596 (E.D. Pa. 2016) ..................................................................18

*Sturgeon v. Pharmerica Corp.*,
    438 F. Supp. 3d 246 (E.D. Pa. 2020) ..................................................................20

*Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*,
    921 F. Supp. 281 (E.D. Pa. 1996) .......................................................................10

*Sweet Charlie's Franchising, LLC v. Sweet Moo's Rolled Ice Cream, LLC*,
    Civil Action 19-4618, 2020 WL 3405769 (E.D. Pa. June 19, 2020)......................17

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984)..........................................................................................5

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003)...................................................................................11, 12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).........................................................................................25, 26, 27, 28

*Tricome v. eBay, Inc.*,
  Civil Action No. 09-2492, 2009 WL 3365873 (E.D. Pa. Oct. 19, 2009) ..........................24, 25

*Trivedi v. Chandan*,
  CIVIL ACTION NO. 22-0548, 2024 WL 1604006 (E.D. Pa. Apr. 11, 2024) ..........................9

*Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*,
  No. CV SAG-18-2315, 2019 WL 2233535 (D. Md. May 23, 2019)......................................35

*Verify Smart Corp. v. Bank of Am., N.A.*,
  Civil Action No. 17-4248 (JMV) (JBC), 2021 WL 2549335 (D.N.J. June 17, 2021) ..........................................................................................9

*Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*,
  75 F.3d 147 (3d Cir. 1996).........................................................................................7

*Victor v. ATLIMG, LLC*,
  CIVIL ACTION NO. 22-2907, 2023 WL 4747677 (E.D. Pa. July 25, 2023)..........................7

*Vizant Techs., LLC v. Whitchurch*,
  97 F. Supp. 3d 618 (E.D. Pa. 2015) ........................................................................9

*Vonbergen v. Lib. Mut. Ins. Co.*,
  CIVIL ACTION No. 22-4880, 2023 WL 8569004 (E.D. Pa. Dec. 11, 2023)
  (Pratter, J.).......................................................................................... *passim*

*Warth v. Seldin*,
  422 U.S. 490 (1975)...................................................................................................26

*Williams v. What if Holdings, LLC*,
  No. C 22-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ......................................39

*Zippo Mfg. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997).....................................................................10, 11, 15

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ............................................................................31, 32

**Statutes**

18 Pa. Cons. Stat. § 5701 *et seq.* ......................................................................... *passim*

18 Pa. Cons. Stat. § 5702 *et seq.* .........................................................................4, 31, 34

18 Pa. Cons. Stat. § 5703 ...................................................................................30, 31

18 Pa. Cons. Stat. § 5704 *et seq.* ........................................................................30, 35

18 Pa. Cons. Stat. § 5725 ...................................................................................31

18 Pa. Cons. Stat. § 6111 ........................................................................... *passim*

28 U.S.C. § 1391 *et seq.* ..................................................................5, 17, 18

28 U.S.C. § 1404 *et seq.* ..........................................................5, 17, 23, 25

28 U.S.C. § 1406 *et seq.* ......................................................................5, 17

**Rules**

Fed. R. Civ. P. 4 ...................................................................................................7

Fed. R. Civ. P. 12 *et seq.* ............................................................... *passim*

**Other Authorities**

*Current Judicial Vacancies*, U.S. Courts, https://www.uscourts.gov/judges-
    judgeships/judicial-vacancies/current-judicial-vacancies (last visited Apr. 28,
    2024) ...........................................................................................................24

Houston Division, U.S. District & Bankruptcy Court for the Southern District of
    Texas, https://www.txs.uscourts.gov/offices/houston-division (last visited
    Apr. 28, 2024)............................................................................................20

*Table C-U.S. District Courts-Civil Federal Judicial Caseload Statistics (March
    31, 2023)*, U.S. Courts, https://www.uscourts.gov/statistics/table/c/federal-
    judicial-caseload-statistics/2023/03/31 (last visited Apr. 28, 2024).......................24

## I.    <u>**INTRODUCTION**</u>

In this lawsuit, Plaintiff Kenneth McQueen ("Plaintiff") attempts to stretch Pennsylvania's anti-wiretapping and other statutes beyond their intended and logical bounds, arguing that the run-of-the-mill JavaScript code running on Defendant Primary Arms, LLC's ("Defendant" or "PA") website—code that nearly every company with an online presence uses to gain an overall understanding of visitor preferences and to enhance their customers' experience—somehow violates Pennsylvania law.  Specifically, Plaintiff alleges that, by hiring Listrak, a service provider PA employs to improve its customers' experiences on the PA website, www.primaryarms.com, and utilizing its code, PA violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA").  Plaintiff further alleges that PA violated Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa. Cons. Stat. § 6111(i), when it allegedly disclosed to Listrak information about his firearm purchase.  Regardless of the statute under which Plaintiff's claims are brought, however, Plaintiff's allegations fail to state an "injury-in-fact" sufficient to establish Article III standing under this Court's analysis in *In re BPS Direct, LLC, & Cabela's, LLC, Wiretapping*, MDL 3074, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023), because Plaintiff does not allege any "sensitive information" was allegedly intercepted or disclosed.  Specifically, this Court has already determined that the alleged interception or disclosure of "basic contact information," including name, address, and phone number, among other information, is not sufficiently sensitive to confer standing.  Plaintiff's own conduct in this lawsuit demonstrates he does not consider the information allegedly intercepted and/or disclosed as "sensitive"—Plaintiff has disclosed his name, state of residency, purchase date, and exact firearm he purchased in his Complaint in a public filing.  This case can be dismissed on that ground alone.

Even if Plaintiff does have standing (he does not), the Court need not reach the Article III standing inquiry at all because Plaintiff has failed to establish that this Court has personal jurisdiction over PA.  As Plaintiff alleges, PA is neither incorporated in Pennsylvania nor does it maintain its principal place of business here.  And while Plaintiff claims he accessed PA's website in Pennsylvania, it is well settled that a company's operation of a nationally accessible website does not subject it to personal jurisdiction in every state throughout the country.  In the same vein, Plaintiff's Complaint also requires dismissal or transfer due to improper venue in this District.  If the Court finds transfer is warranted, it should transfer this action to U.S. District Court for the Southern District of Texas based on PA's valid forum-selection clause on the PA website.

If Plaintiff can overcome these insurmountable preliminary subject matter and personal jurisdiction hurdles (he cannot), his case nevertheless requires dismissal for failure to state a claim upon which relief can be granted.  To state a claim for violation of WESCA, PA must have used a "device" to "intercept" the "contents" of an "electronic communication," as those terms are defined in the statute.  Plaintiff's allegations miss the mark.  JavaScript code is not a "device." Further, Plaintiff's barebones allegations do not demonstrate PA has procured, or Listrak has intercepted, any substantive "contents" of "electronic communications."  Further, no third party actually "intercepted" any of Plaintiff's "electronic communications" because Listrak is effectively an "agent" or extension of PA.  And, most importantly, Plaintiff's claim for violation of WESCA fails because he consented to the conduct at issue via PA's clear and conspicuous "Privacy Policy" and "Terms & Conditions," which put Plaintiff on notice of Listrak and how PA may potentially, if at all, collect or use customer analytics data.  These allegations do not meet the statutory definitions to give rise to a claim for violation of WESCA.  Plaintiff likewise fails to state a claim for violation of the UFA for the same reason, *i.e.*, because Plaintiff consented to any

disclosure of his "gun purchase" information or because PA never disclosed any gun purchase information to Listrak that was unauthorized. For these reasons, as explained fully below, this Court should dismiss Plaintiff's Complaint.

## II.    PLAINTIFF'S ALLEGATIONS AND MATERIAL FACTS

PA is a limited liability company formed under the laws of and registered in the state of Texas with headquarters in Houston, Texas. [Compl., ¶ 6.] PA operates www.primaryarms.com, which is accessible throughout the United States and internationally and allows visitors to browse and purchase firearms and firearms accessories. [*Id.*] PA does not have any brick-and-mortar stores in any other location in the United States except Texas. [*See* **Exhibit D**, Decl. of Joyce Banda, ¶ 3.] Further, at all relevant times prior to and upon filing of Plaintiff's lawsuit in February 2024, Plaintiff did not employ any individuals who resided in Pennsylvania. [*Id.* at ¶ 4.] Purchases on the PA website from Pennsylvania addresses account for approximately 3% of PA's total revenue in the year of 2023. [*Id.* at ¶ 6.]

Plaintiff alleges he visited PA's website "on or about May, 2033" while in Pennsylvania. [Compl., ¶ 6.] While on the PA website, Plaintiff alleges he "purchased a Seekins Precision SP10 6.5 Creedmore Semi-Automatic AR-10 Rifle." [*Id.*] Plaintiff does not state what information he provided to PA to complete this purchase other than his "email address" and "the type of gun he purchased." [*See id.* at ¶ 44.]

Plaintiff further alleges that PA "hosts code for Listrak," a "customer engagement platform that allows companies, like Defendant, to build customer profiles," [*id.* at ¶¶ 8, 10 &11], and through hosting this code on the PA website "assist[ed] Listrak with intercepting Plaintiff's communications, including those that contained personally identifiable information and protected information about his firearms purchases," [*id.* at ¶ 8]. Specifically, Plaintiff contends that Listrak is capable of intercepting the following information: "specific information to identify the item

being purchased" "[w]hen a consumer adds an item to their online cart for checkout," [*id.* at ¶ 14]; the fact that a "consumer view[e]d the items in their cart to initiate the checkout process," [*id.* at ¶ 15]; and "personally identifiable information" like an "email address" when a consumer initiates the checkout process," [*id.* at ¶ 16]. Plaintiff further claims Listrak "matches this information to its existing database to identify consumers who visit Defendant's website." [*Id.* at ¶ 17.] Further, despite acknowledging that PA has a Privacy Policy on its website, [*id.* at ¶ 21], Plaintiff claims he and class members did not consent to these "privacy policies prior to third parties, including Listrak, intercepting their communications," [*id.*]. Plaintiff further claims that even if the Privacy Policy were applicable, "[it] fails to disclose that Defendant assists third parties like Listrak with intercepting communications that contain sensitive information." [*Id.*]

Notably, Plaintiff does not allege that Listrak "intercepts" "sensitive information" like credit card or financial account information or personal health information. [*See generally id.*] Plaintiff also does not allege what information he provided PA to make his purchase, nor does he allege what specific information was collected about him except his "email address" and "the type of gun he purchased." [*Id.* at ¶ 44.] Indeed, he does not state that his name or address collected, or his credit card information, or any other *specific* "sensitive" personal information about him. [*See generally id.*] Finally, Plaintiff does not allege that he suffered any actual harm whatsoever; he alleges only that PA has violated two Pennsylvania statutes. [*Id.*]

In short, Plaintiff's sole argument boils down to that PA "hosts code for Listrak," which "allows Listrak to intercept consumers', including Plaintiff's, [undefined, unspecified, and non-harmful] electronic communications," [*id.* at ¶¶ 8, 10], and that such conduct violates Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. Cons.

Stat. § 5702 *et seq.* and Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa. Cons. Stat. § 6111(i).  Plaintiff's Complaint should be dismissed.

## III.  <u>LEGAL STANDARDS</u>

This Court has multiple grounds upon which it can and should dismiss Plaintiff's Complaint.  It should first dismiss for lack of personal jurisdiction.  "Lack of jurisdiction is raised under Fed. R. Civ. P. 12(b)(2)."  *Havassy v. Keller Williams Realty, Inc.*, CIVIL ACTION NO. 21-4608, 2024 WL 1640984, at *2 (E.D. Pa. Apr. 16, 2024).  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction."  *Abira Med. Labs., LLC v. Anthem Blue Cross Blue Shield Missouri*, CIVIL ACTION NO. 23-4940, 2024 WL 1704981, at *1 (E.D. Pa. Apr. 19, 2024) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)).  To do so, he must "establish[ ] with reasonable particularity sufficient contacts between the defendant and the forum state."  *Id.* (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).  Reliance on "bare pleadings alone" will not suffice; plaintiff must "respond with actual proofs, not mere allegations."  *Id.* (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)); *accord Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) ("[A] plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.").

This Court should also dismiss this case pursuant to Rule 12(b)(3) as venue is improper in this District under 28 U.S.C. § 1391.  "Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal . . . if venue is improper."  *Manning v. Hunt*, CIVIL ACTION NO. 18-2470, 2018 WL 11321483, at *5 (E.D. Pa. Sept. 18, 2018).  If the Court finds venue is proper in this District, it should nevertheless transfer this case to U.S. District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404.  "In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406."  *Nutrition Distrib. LLC v. Muscle*

*Store Inc.*, 2:17-CV-01515-CRE, 2018 WL 3640190, at \*2 (W.D. Pa. July 10, 2018) (quoting *Jumara v. St. Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995)).  "Section 1406 'applies where the original venue is improper and provides for either transfer or dismissal of the case,' [while] [s]ection 1404(a) 'provides for the transfer of a case where both the original and the requested venue are proper.'"  *Id.*  "When deciding a motion to dismiss for improper venue, the court must 'accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits.'"  *Rubin v. Mangan*, CIVIL ACTION No. 19-5301, 2021 WL 617662, at \*3 n.3 (E.D. Pa. Feb. 17, 2021) (quoting *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012)).  "The court may also consider documents that are 'integral to or explicitly relied upon in the complaint,' including 'exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'"  *Id.* (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Courts "usually address personal jurisdiction before venue[.]"  *Rubin*, 2021 WL 617662, at \*3 n.3 (citation omitted).

Plaintiff's Complaint also requires dismissal for lack of standing necessary for Article III subject matter jurisdiction.  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  To meet the threshold standing requirement, Plaintiff bears the burden of showing "an injury" that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

Finally, Plaintiff's Complaint must be dismissed for failure to state a claim.  Under Rule

12(b)(6), only complaints that contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" survive a motion to dismiss. *Freeman v. Allentown Sch. Dist.*, No. 24-cv-0670, 2024 WL 897835, at *1 (E.D. Pa. Mar. 1, 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Victor v. ATLIMG, LLC*, CIVIL ACTION NO. 22-2907, 2023 WL 4747677, at *2 (E.D. Pa. July 25, 2023) (quoting *Iqbal*, 556 at 678); *see also Burns v. SeaWorld Parks & Entm't, Inc.*, 675 F. Supp. 3d 532, 538 (E.D. Pa. 2023) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (citation omitted). Ultimately, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## IV.    ARGUMENT

### A.    The Court Does Not Have Personal Jurisdiction Over PA.

The Court should dismiss Plaintiff's Complaint because it does not have personal jurisdiction over PA. As an initial matter, although a court usually begins its analysis with subject matter jurisdiction, "[it] ha[s] discretion to instead start with personal jurisdiction when [it] [is] presented with 'a straightforward personal jurisdiction issue presenting no complex question of state law' and when resolving the subject-matter jurisdiction issue would implicate 'difficult and novel questions.'" *Adossari ex rel. Adossari v. Ripp*, 49 F.4th 236, 256 (3d Cir. 2022) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999)). "A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long-arm statute "is coextensive with the limits placed on the

states by the federal Constitution." *Id.*  Federal courts in Pennsylvania therefore look to federal law to determine whether personal jurisdiction exists.  *Id.*  To establish that the Court's exercise of personal jurisdiction over Defendant is proper, Plaintiff must show that PA "made constitutionally sufficient 'minimum contacts' with" Pennsylvania.  *Id.* (citation omitted).

Sufficient minimum contacts come in two forms: general jurisdiction or specific jurisdiction.  *Havassy*, 2024 WL 1640984, at *2.  "Absent consent, a court may assert jurisdiction over a corporation 'only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."  *BGSD, Inc. v. SpazeUp, LLC*, No. 5:23-cv-4855, 2024 WL 1619279, at *2 (E.D. Pa. Apr. 15, 2024)  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).  Plaintiff does not allege and cannot establish either general or specific jurisdiction.

### 1. PA is not subject to general jurisdiction in Pennsylvania.

"For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business."  *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022); *see also Daimler*, 571 U.S. at 137.  This Court has held that the personal jurisdiction inquiry is the same for LLCs like Defendant.  *See Finn v. Great Plains Lending, LLC*, CIVIL ACTION No. 15-4658, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016) ("While Great Plains is an LLC and not a corporation, the reasoning of *Daimler* applies with equal force.  Although the language of *Daimler* speaks only in terms of corporations, the subsidiary at issue in *Daimler* was

Mercedes-Benz USA, LLC ('MBUSA') . . . Even though MBUSA [wa]s an LLC, the Court looked to MBUSA's place of incorporation and principal place of business to determine whether it was essentially at home in California and thus subject to general jurisdiction in the State.").  Plaintiff alleges that PA is a limited liability company headquartered in Houston, Texas.  [Compl., ¶ 7.]  PA was formed, registered, and has its headquarters in Texas.  [Ex. D, ¶ 3.]  Plaintiff does not allege any exceptional circumstances that would otherwise render PA "essentially at home" in Pennsylvania.  Thus, Plaintiff's allegations do not support a finding that the Court has general jurisdiction over PA.

### 2.    This Court does not have specific jurisdiction over PA.

"[S]pecific jurisdiction allows the court to hear claims that arise from or relate to the party's contacts with the forum state, such that the defendant should reasonably anticipate being haled into court in that forum." *Chant Eng'g Co. Inc. v. Cumberland Sales Co.*, CIVIL ACTION NO. 20-4559, 2021 WL 848062, at *3 (E.D. Pa. Mar. 5, 2021).  The Third Circuit Court of Appeals "employs a three-part test to analyze whether a party's contacts are sufficient to permit the exercise of specific jurisdiction in accordance with the mandates of due process: (1) 'the defendant must have purposefully directed its activities at the forum'; (2) 'the litigation must arise out of or relate to at least one of those activities'; and (3) the exercise of jurisdiction must 'comport[ ] with traditional notions of fair play and substantial justice.'" *Vonbergen v. Lib. Mut. Ins. Co.*, CIVIL ACTION No. 22-4880, 2023 WL 8569004, at *4 (E.D. Pa. Dec. 11, 2023) (Pratter, J.) (quoting *O'Connor*, 496 F.3d at 317, 324).  Courts only consider the third requirement if the first two requirements are met. *Trivedi v. Chandan*, CIVIL ACTION NO. 22-0548, 2024 WL 1604006, at *3 (E.D. Pa. Apr. 11, 2024) (citation omitted).

"When an intentional tort is alleged," including an alleged intentional violation of a

statute,[1] "a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test," stemming from the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). *Verify*, 2021 WL 2549335, at *7; *see also Vonbergen*, 2023 WL 8569004, at *4 (applying *Calder* effects test in case alleging WESCA violation); *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 632 (E.D. Pa. 2015) (finding *Calder* effects test applied when plaintiff alleged defendants committed a violation of the Delaware Uniform Trade Secrets Act ("DUTSA"), because "if either defendant committed a violation of DUTSA, then she ha[d] committed an intentional tort"). Under the *Calder* effects test, the plaintiff must show that "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) [t]he defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Vonbergen*, 2023 WL 8569004, at *4 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)). Here, Plaintiff's allegations do not satisfy the second or third elements of the *Calder* test. Accordingly, the Court lacks personal jurisdiction over Defendant and should dismiss Plaintiff's Complaint.

> i.    *Plaintiff fails to allege that PA's allegedly tortious conduct was "expressly aimed" at Pennsylvania.*

"The [second prong of the] *Calder* effects test is not satisfied by the 'mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there.'" *Chant*, 2021 WL 848062, at *5 (quoting *IMO Indus.*, 155 F.3d at 266). "Rather, a plaintiff must 'point to other actions that adequately demonstrate that the defendants targeted (or

---

[1] Although specific jurisdiction determinations are "claim specific," where, as here, the claims are sufficiently similar and based on the same underlying conduct, courts have concluded "it may not be necessary to conduct a claim-specific analysis." *Verify Smart Corp. v. Bank of Am., N.A.*, Civil Action No. 17-4248 (JMV) (JBC), 2021 WL 2549335, at *7 (D.N.J. June 17, 2021) (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001)) (cleaned up).

'expressly aimed their conduct at) the forum." *Id.* "There is [also] a critical difference between an act which has an effect in the forum and one directed at the forum itself." *Vonbergen*, 2023 WL 8569004, at *5 (quoting *Surgical Laser Techs., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281, 285 (E.D. Pa. 1996)). "[A]bsent some conduct by defendant directed at Pennsylvania rather than simply directed at plaintiff, Pennsylvania is not a reasonably foreseeable forum." *Id.* (quoting *Surgical Laser*, 921 F. Supp. at 286 n.6).

Further, where, as here, a court must analyze the *Calder* test "in the context of internet usage, the jurisdictional framework set out in *Zippo Manufacturing v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is widely accepted as the best approach to assess whether the non-resident defendant's internet usage justifies the exercise of personal jurisdiction." *Vonbergen*, 2023 WL 8569004, at *5 (quoting *Pacheco v. Padjan*, CIVIL ACTION No. 16-3625, 2017 WL 3217160, at *3 (E.D. Pa. July 28, 2017)) (cleaned up). The *Zippo* test is as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (quoting *Zippo*, 952 F. Supp. at 1124). The Third Circuit "has emphasized . . . that 'the mere operation of a commercially interactive web site should not subject the operators to jurisdiction anywhere in the world.'" *Chant*, 2021 WL 848062 at *5 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). "Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web

site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.

Here, PA's allegedly "tortious" conduct is using Listrak code on the PA website to procure an interception of Plaintiff's and the proposed class's personal information for "advertising purposes" and disclosing such information, including information about firearms purchases, to Listrak in alleged violation of WESCA and the UFA.  [Compl., ¶¶ 18–19, 44.]  Thus, as this Court found in *Vonbergen*, Plaintiff must allege that PA "aimed its use of [Listrak code] at Pennsylvania for the Court to find that the exercise of jurisdiction is proper under the *Calder* effects test."  2023 WL 8569004, at *6.  Unlike in *Vonbergen*, however, Plaintiff fails to show any "express aiming" at Pennsylvania residents, including Plaintiff.

First, Plaintiff alleges simply that PA procured interception of his communications while he was in Pennsylvania and disclosed such communications to Listrak in violation of WESCA and the UFA, respectively.  Such barebones allegations are insufficient as a matter of law to establish PA's allegedly tortious conduct was "expressly aimed" at Pennsylvania.  *See Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007) ("Because [plaintiff] has not shown defendants expressly aimed their conduct at Pennsylvania, we will affirm the District Court's grant of summary judgment."); *Nat'l Expositions, Inc. v. DuBois*, 605 F. Supp. 1206, 1212 (W.D. Pa. 1985) ("Plaintiffs' papers are devoid of any factual statements demonstrating personal jurisdiction over [defendant], but instead contain bare, unsubstantiated allegations."); *Chant*, 2021 WL 848062, at *5 ("[A] plaintiff must 'point to other actions that adequately demonstrate that the defendants targeted (or 'expressly aimed' their conduct at) the forum.'") (citation omitted).

Second, also unlike in *Vonbergen*, Plaintiff does not allege that Defendant furnished "Pennsylvania-specific forms that ask Pennsylvania-specific questions in order to obtain

Pennsylvania-specific insurance from [Defendant]." 2023 WL 8569004, at *7. Rather, this is a case where PA "simply operates a nationally accessible, interactive website that does not aim at any particular forum." *Id.*; *cf. Toys "R" Us*, 318 F.3d at 454. Allegations that a defendant "c[an] knowingly interact, or engage . . . with residents of Pennsylvania" through its website are insufficient to establish jurisdiction because the mere "*capab*[*ility*] of doing business with Pennsylvania customers" does not mean defendant "intentionally did so." *Murphy v. Humboldt Clothing Co.*, No. 1:20-cv-58, 2021 WL 307541, at *5 (W.D. Pa. Jan. 29, 2021) (collecting cases).

Third, Plaintiff cannot "establish the requisite minimum contacts through his own efforts to utilize Defendant's website" from a certain forum "[because] personal jurisdiction must arise from the defendant's own purposeful targeting of the forum state, not the unilateral activities of others." *Id*. at *6 (citing *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009)); *see also M.H. & J.H., ex rel. C.H. v. Omegle.com LLC*, No. 20-11294, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (no "indicia of purposeful direction" to forum where website is "generally accessible;" "basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website *targeted* those users"); *Oyebanji v. Palmetto Vacation Rentals LLC*, Civil No.: 20-cv-8983 (KSH) (CLW), 2021 WL 3732883, at *3 (D.N.J. Aug. 20, 2021) (collecting cases).

The Western District of Pennsylvania's decision in *Hasson v. FullStory, Inc.*, a session-replay case, is on point. 2:22-cv-1246, 2023 WL 4745961, at *1, *2 (W.D. Pa. July 25, 2023).[2] In that case, the court found that Hasson could not show that "FullStory expressly aimed its allegedly tortious conduct at Pennsylvania" when Hasson's allegations "relate[d] to his use of the

---

[2] Like *In re BPS* and *Gamestop* discussed herein, this case is on appeal to the Third Circuit. *See Hasson v. FullStory, Inc.*, Case No. 23-2535, Dkt. No. 33 (3d Cir.) (defendant's April 4, 2024 summary of oral argument stated as "Whether the district court correctly dismissed Hasson's claims for lack of personal jurisdiction, and whether, in the alternative, this Court should affirm dismissal of Hasson's suit for failure to state a claim under Pennsylvania law.").

Mattress Firm website." *Id.* at *2. There, FullStory, a software service provider for Mattress Firm, a Texas company, contracted with Mattress Firm to provide its software to Mattress Firm for use on Mattress Firm's website. *Id.* The court concluded that "[m]ere operation of a website does not cause a website provider (or a third-party vendor) to expressly aim its conduct at the forum state." *Id.* Further, "[a]lthough Mr. Hasson argue[d] that FullStory ha[d] other Pennsylvania clients who [could] be using FullStory's software, such [wa]s not enough to demonstrate that FullStory ha[d] expressly aimed its conduct at Pennsylvania for the purposes of the present case [because] [s]uch other Pennsylvania alleged website contacts [wer]e irrelevant to establish specific jurisdiction . . . as those contacts d[id] not relate to Mr. Hasson's claims against FullStory." *Id.* In short, the court concluded that "[t]he website upon which Mr. Hasson base[d] his claims [wa]s Mattress Firm's, and other websites in Pennsylvania [wer]e not relevant to his claim." *Id.* Accordingly, "FullStory d[id] not have the requisite minimum contacts with Pennsylvania to satisfy the *Calder* test for personal jurisdiction." *Id. See also Massie v. General Motors Co.*, No.: 1:20-cv-01560, 2021 WL 2142728, at *1, *5, *6 (E.D. Cal. May 26, 2021) (hereinafter "*Massie I*") (holding in session-replay case that personal jurisdiction did not exist in California simply because the plaintiff alleged that "GM knew and foresaw that the wiretapping would impact Californians" because "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction" over claims related to information collected on that website).

The Court should reach the same conclusion as the *Hasson* and *Massie I* courts. If Plaintiff's allegations were sufficient for specific jurisdiction, "every online advertiser worldwide [could] be haled" into every state. *Massie I*, 2021 WL 2142728, at *6 (quoting *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)); *see also Rocke v. Pebble Beach Co.*,

541 F. App'x 208, 211–12 (3d Cir. 2013) ("[M]ere operation of a commercially available web site should not subject the operator to jurisdiction anywhere in the world."); *Smith v. Facebook*, 262 F. Supp. 3d 943, 952 (N.D. Cal. 2017) ("Under Plaintiffs' theory, every website operator that embeds one of these tools could be haled into court where the third-party company resides. Personal jurisdiction cannot reasonably stretch so far.").

Similarly, the fact that Pennsylvania residents can make online purchases from PA in Pennsylvania does not establish specific jurisdiction. Even if it could, it would not under the circumstances: purchases from Pennsylvania residents account for only approximately 3% of PA's website sales in 2023. In any case, Plaintiff does not allege that PA's marketing or sale of goods to Pennsylvanians has anything to do with his claims (or that PA specifically marketed or sold goods to Pennsylvania residents in particular as opposed to all United States residents). *See, e.g.*, *Massie I*, 2021 WL 2142728, at *6 (fact that GM received profits from California website visitors was not sufficient to establish personal jurisdiction because the claims at issue arose from and related to "session recording software allegedly installed on GM's nationally accessible websites" and not any business conducted by GM through the website). Specific jurisdiction does not lie based on Defendant's alleged activity in the forum state wholly unrelated to the alleged wrongful actions that form the basis of Plaintiff's claim. *See id.*; *Matus*, 715 F. App'x at 663 ("Matus's claims 'arise from' only the online activities that Premium aimed at the entire world. If Premium can be haled into California merely on the basis of its universally accessible website, then, under Matus's proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California.").

On balance, PA's website tips closer to the middle ground/passive websites on the *Zippo* sliding scale and specific jurisdiction is therefore lacking. Although www.primaryarms.com is an

interactive website where a user can exchange information with Defendant, Plaintiff has not shown specific targeting, advertising, forms, questions, or the like directed at Pennsylvania residents as opposed to all U.S. residents generally.  Instead, the website is similarly interactive and commercially available to all U.S. residents and internationally.  Underscoring this conclusion further is the fact that PA does not otherwise have any connection to Pennsylvania: it does not have stores in Pennsylvania; it is not registered in Pennsylvania; it did not employ any individuals in Pennsylvania at any relevant period related to this lawsuit; and Pennsylvania sales account for approximately 3% of PA's total revenue in 2023.  Plaintiff cannot satisfy the second element of the *Calder* test.

> ii.    *Plaintiff fails to allege that PA "knew" Plaintiff would suffer harm in Pennsylvania.*

Where, as here, a plaintiff fails to establish the "expressly aiming" element of the *Calder* test, the Court need not consider the other two elements.  *Hasson*, 2023 WL 4745961, at *2 (citation omitted).  This Court therefore does not need to evaluate the "knowledge" prong.  If it does,  the *Calder* test still fails.

To satisfy the third prong of the *Calder* effects test, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum." *Vonbergen*, 2023 WL 8569004, at *4 (quoting *IMO Indus.*, 155 F.3d at 266).  Here, Plaintiff does not allege he was harmed whatsoever; he alleges a bare violation of a statute.  Even if had alleged harm, any injury Plaintiff suffered was "incidental" to use of PA's website. *See Remick*, 238 F.3d at 259 ("Given that the website was intended to provide information on Manfredy and that it was accessible worldwide, there is no basis to conclude that the defendants expressly aimed their allegedly tortious activity at Pennsylvania knowing that harm was likely to be caused there . . . Any resulting harm to Remick was merely incidental."); *see also Redi-Data v.*

*Spamhaus Project*, Case No. 20-cv-17484, 2022 WL 3040949, at *8 (D.N.J. Aug. 2, 2022) (finding plaintiff failed to show Spamhaus was aware that plaintiff "would suffer the brunt of the harm caused by the tortious conduct in the forum" because "the harm appear[ed] to have been geographically dispersed across the United States and international borders"). Because Plaintiff does not and cannot allege facts satisfying the "express aiming" or "knowledge" prongs of the *Calder* effects test, the Court should dismiss this case for lack of personal jurisdiction.

    **B.**     <u>Dismissal or Transfer To The Southern District of Texas Is Required Whether Or Not Venue Is Proper In This District.</u>

        **1.**     **Dismissal or transfer to the Southern District of Texas is appropriate under either 28 U.S.C. §§ 1406 or 1404.**

Whether venue is proper in this District is governed by 28 U.S.C. § 1391(b). *Sweet Charlie's Franchising, LLC v. Sweet Moo's Rolled Ice Cream, LLC*, Civil Action 19-4618, 2020 WL 3405769, at *2 (E.D. Pa. June 19, 2020). In his Complaint, Plaintiff alleges venue is proper only pursuant to § 1391(b)(2), claiming that a "substantial part of the events or omission giving rise to [his] claim occurred in this District." [Compl., ¶ 5.] "This provision 'favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial[,]' . . . so that a defendant is not haled into a remote district having no real relationship to the dispute." *Nutrition Distrib. LLC*, 2018 WL 3640190, at *3 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). "When evaluating 'whether events or omissions giving rise to the [plaintiff's] claims are substantial, it is necessary to look at the nature of the dispute.'" *Id.* (quoting *Cottman*, 36 F.3d at 295). If venue is improper, "a district court 'shall dismiss, or, if it be in the interest of justice, transfer such case to any district or division in which it could have been brought'" pursuant to § 1406(a). *Rogers v. Smith Volkswagen, LTD*, CIVIL ACTION No. 19-2567, 2020 WL 1676400, at *7 (E.D. Pa. Apr. 6, 2020).

Similarly, a court may, under § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Kilduff v. Jayco, Inc.*, Civil No. 5:23-cv-00470-JMG, 2023 WL 3361187, at *2 (E.D. Pa. May 10, 2023) (quoting 28 U.S.C. § 1404(a)).  "If the venue is found to be proper, 'the Court is required to undertake a balancing test to decide whether the 'interests of justice [would] be better served by transfer to a different forum.'" *Id.* (citation omitted).  This analysis, changes, however, in cases involving valid forum-selection clauses.  *Id.*

Here, PA disputes that venue is proper in the Eastern District of Pennsylvania pursuant to § 1391(b)(2).  The existence of an interactive website accessible in Pennsylvania, nationwide and internationally, even when an individual has purchased something from that website, is not enough to establish proper venue under § 1391(b)(2).  *See Nutrition Distrib.*, 2018 WL 3640190, at *3.  Further, Plaintiff's allegations stem not from his alleged gun purchase, but from PA's alleged procurement and use of Listrak code on its website, which is certainly not targeted at nor does it substantially occur in Pennsylvania.  If the Court agrees, PA urges the Court to dismiss this case in its discretion.  *See Guidecraft, Inc. v. OJCommerce, LLC*, Civil Action No. 2:18-CV-01247, 2019 WL 2373440, at *7 (W.D. Pa. May 20, 2019).  Alternatively, transfer to the Southern District of Texas would be appropriate under the parties' valid forum-selection clause discussed below.

### 2.    The parties' forum-selection clause should be enforced.

In cases involving a valid forum-selection clause, the forum-selection clause "'should be given controlling weight in all but the most exceptional cases.'" *Azer Sci. Inc. v. Quidel Corp.*, Civil No. 5:21-cv-02972-JMG, 2021 WL 5918655, at *4 (E.D. Pa. Dec. 15, 2021) (quoting *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013)) (cleaned up). To decide whether to enforce a forum-selection clause, "a district court conducts a two-part

analysis": (1) "the court must [first] determine whether the forum selection clause is valid and enforceable"; and (2) "the court must consider whether, pursuant to § 1404(a), 'extraordinary circumstances' militate against enforcing the forum selection clause.'" *Steinmetz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 220 F. Supp. 3d 596, 601 (E.D. Pa. 2016) (citing *Atl. Marine*, 571 U.S. at 62).

i.    The forum-selection clause is valid and enforceable.

"Forum selection clauses are presumptively valid and should be enforced unless they are unreasonable under the circumstances." *C.H. Robinson Co., Inc. v. MSC Mediterranean Shipping Co., S.A.*, CIVIL ACTION NO. 2:23-cv-01748-MRP, 2024 WL 1363496, at *3 (E.D. Pa. Mar. 29, 2024) (citation omitted). Further, "[f]orum selection clauses appearing in internet agreements are [likewise] enforceable." *Loveland v. Facebook*, 20-cv-6260-JMY, 2021 WL 1734800, at *5 (E.D. Pa. May 3, 2021) (citation omitted). "'Internet provisions . . . readily available on the identified internet site, and plainly and clearly set forth therein,' are binding even where the party has not read them" under Pennsylvania law. *Polytek Dev. Corp. v. 'Doc' Johnson Enters.*, 532 F. Supp. 3d 243, 250 (E.D. Pa. 2021) (quoting *Pentecostal Temple Church v. Streaming Faith, LLC*, Civil Action No. 08-554, 2008 WL 4279842, at *5 (W.D. Pa. Sept. 16, 2008)); *Loveland*, 2021 WL 1734800, at *5 (citing *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (where the terms of the agreement were available on Defendant's website, the terms were binding despite the fact that plaintiff was unaware of specific provisions)). A forum section clause is unreasonable only if "'(1) it is the result of fraud or overreaching; (2) . . . enforcement would violate strong public policy of the forum; or (3) . . . enforcement would result in a jurisdiction so seriously inconvenient as to be unreasonable.'" *C.H. Robinson*, 2024 WL 1363496, at *3 (citation omitted).

Here, PA's forum selection clause is located at the bottom of any webpage on the website via a hyperlink called "Terms & Conditions."[3]  The Terms & Conditions state in relevant part:

> This website is owned and operated by PRIMARY ARMS, LLC. By visiting our website and accessing or purchasing the information, resources, services, products, and tools we provide, you understand and agree to accept and adhere to the following terms and conditions as stated in this policy (hereafter referred to as 'User Agreement'). This agreement is in effect as of January 1, 2013. . . .

> GOVERNING LAW This website is controlled by Primary Arms, LLC. It can be accessed by most countries around the world. **By accessing our website, you agree that the statutes and laws of the State of Texas, without regard to the conflict of laws and the United Nations Convention on the International Sales of Goods, will apply to all matters relating to the use of this website and the purchase of any products or services through this site. Furthermore, any action to enforce this User Agreement shall be brought in the federal or state court of the State of Texas, Harris County, Texas,[4] you hereby agree to personal jurisdiction by such courts, and waive any jurisdictional, venue, or inconvenient forum objections to such courts**.[5]

---

[3]  *See* **Exhibit B**, Terms & Conditions, PA Website; also available https://329b0589.isolation.zscaler.com/profile/3b680784-09e2-408e-b83f-31b635db1a66/zia-session/?controls_id=9aae7024-2242-47cf-a126-14406026b5d7&region=pdx&tenant=02dd588acff4&user=8f4c886f080dab145d84b462ac2a3e6423921dcd4d950d1c20a7fe8ec39d63fc&original_url=https%3A%2F%2Fwww.primaryarms.com%2Fterms-conditions&key=sh-1&hmac=58b6435ad435a4a2f3e5e17c42cfe2a9947e7e56170aa8bda83babc2fd91363d (last visited Apr. 28, 2024). Defendant notes that this Court may take judicial notice of documents incorporated into the Complaint by reference, matters of public record, and "undisputedly authentic documents if the complainant's claims are based upon th[o]se documents." *Star Buick GMC v. Century Grp.*, 541 F. Supp. 3d 582, 587 (E.D. Pa. 2021) (quoting *Mayer*, 605 F.3d at 230).  Where, as here, material even on a *private* website is relied on in the complaint and is a matter of public record, and where Defendant has provided screen shots and a declaration in support of the authenticity of the webpage, the Court may take judicial notice of pages of the website or find the pages can be considered under the doctrine of incorporation by reference.  *See Glendening v. Fair Acres Geriatric Ctr.*, Case No. 19-cv-01167-JMY, 2019 WL 5550977, at *1 n.2 (E.D. Pa. Oct. 28, 2019) (court relied on screenshots of defendant's private website when considered defendant's motion to dismiss when plaintiff's complaint relied on the information contained in the screenshot, defendant attached the webpage as an exhibit, and when plaintiff did not contest the relevance or authenticity of defendant's exhibit); *see also Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 258 n.72 (E.D. Pa. 2020) (stating that "best practice" for a party seeking judicial notice of pages on a private website is to both attach copies as exhibits to the motion for judicial notice and hyperlink to the website where the material can be found).

Here, Plaintiff has cited the Privacy Policy and included screenshots of underlying "code" running on the PA website, and the website (including the terms therein) are central to this action.  Defendant has also provided screenshots and exhibits of the relevant webpages in support of its motion to dismiss.  Accordingly, the Court should take judicial notice of the Privacy Policy, Terms & Conditions, and the "Check Out" webpage, attached hereto as exhibits, or find that these webpages can be considered under the doctrine of incorporation by reference.
[4] U.S. District Court for the Southern District of Texas (Houston Division) covers Harris County, Texas.  *See* Houston Division, U.S. District & Bankruptcy Court for the Southern District of Texas, https://www.txs.uscourts.gov/offices/houston-division (last visited Apr. 28, 2024).
[5] *Id.* (emphasis added).

The Terms & Conditions are also explicitly referenced in PA's Privacy Policy, which directs website users to "visit [PA]'s Terms and Conditions section establishing the use, disclaimers, and limitations of liability governing use of our website."[6]  These Terms & Conditions and the Privacy Policy were in effect in May 2023, the time Plaintiff claims he purchased a gun from the PA website.  [*See* **Exhibit E**, Decl. of Kody Staples, ¶ 3.]

The forum-selection clause contained in the Terms & Conditions is obligatory and binding.  First, Plaintiff was provided with reasonable notice of the Terms & Conditions and therefore the forum-selection clause therein.  Plaintiff admits he knew of the existence of the Privacy Policy in his Complaint, [*see* Compl., ¶ 21], and the Privacy Policy explicitly references and directs users to the Terms & Conditions, both in the text of the Privacy Policy and hyperlinked at the bottom of Privacy Policy webpage.  Plaintiff also admits that he purchased a gun from the PA website.  [*Id.* at ¶ 6.]  When checking out either as a "Guest" or when creating an account, Plaintiff would have been advised again that, "By using our website, you agree to our Privacy Policy and Terms & Conditions" directly above the buttons to "Proceed to Checkout" or "Create Account," respectively.[7]  Regardless if Plaintiff read the Terms & Conditions, he was put on reasonable notice of their existence at multiple times while navigating the website and when he purchased a gun and

---

[6] *See* **Exhibit A**, Privacy Policy, PA Website, available https://329b0589.isolation.zscaler.com/profile/3b680784-09e2-408e-b83f-31b635db1a66/zia-session/?tenant=02dd588acff4&region=pdx&controls_id=62c7d198-f045-411e-b2b3-8f9ba85ec221&user=8f4c886f080dab145d84b462ac2a3e6423921dcd4d950d1c20a7fe8ec39d63fc&original_url=https%3A%2F%2Fwww.primaryarms.com%2Fprivacy-policy&key=sh-1&hmac=6544c7a78442a0a02b8ccf104f95046dab2931f2cb3455816bd5ed2c376f5aa1 (last visited Apr. 28, 2024)

[7] *See* **Exhibit C**, "Check Out" Page, PA Website, https://329b0589.isolation.zscaler.com/profile/3b680784-09e2-408e-b83f-31b635db1a66/zia-session/?controls_id=3848f7b1-8654-4071-a86f-af747f4854b7&region=pdx&tenant=02dd588acff4&user=8f4c886f080dab145d84b462ac2a3e6423921dcd4d950d1c20a7fe8ec39d63fc&original_url=https%3A%2F%2Fwww.primaryarms.com%2Fsca-dev-2019-2%2Fcheckout.ssp%3Fis%3Dcheckout%23login-register&key=sh-1&hmac=3021d6eda96097bb3f15dfdef95ace9525308198d013d6049e8b6e583e4e1513 (last visited Apr. 28, 2024).

other items from PA.[8]  *See Kidstar v. Facebook, Inc.*, Civil Action No. 2:18-cv-13558, 2020 WL 4382279, at *3 (D.N.J. July 31, 2020) (concluding plaintiff was put on reasonable notice of Facebook's User Agreements terms when "prospective Facebook users were required to affirmatively click a 'Sign Up' button, directly under which was readable, dark grey text: 'By clicking Sign Up, you are indicating that you have read and agree to the Terms of Use and Privacy Policy'" and "[a]fter clicking on the hyperlinked Terms of Use, which potential users were required to read in order to create a Facebook account, the user would have seen and read the section titled 'Disputes' which included the forum selection clause"); *see also Air Canada & Aeroplan Inc. v. LocalHost LLC*, C.A. No. 23-1177-GBW, 2024 WL 1251286, at *4 (D. Del. Mar. 14, 2024) (finding Delaware courts would likely enforce a browsewrap agreement "when the user has actual notice of the agreement's terms and continues to use the website, because such continued use implicitly manifests the user's assent to the agreement").

Second, the terms of the forum-selection clause apply to the dispute at issue.[9]  The Term & Conditions state that the User Agreement will "apply to all matters relating to the use of this website and the purchase of any products or services through this site, " and "any action to enforce this User Agreement shall be brought in the federal or state court of the State of Texas, Harris County." [Ex. B.] Plaintiff's claims for violation of WESCA and the UFA stem from his "use of

---

[8] In fact, this is not the first time Plaintiff has made a purchase from PA's website. [*See* Ex. D, ¶ 7.] Based on PA billing records, Plaintiff has completed at least 4 sales orders including a total of seven items from the PA website. [*Id.*]

[9] The Third Circuit has held that state contract law applies when assessing the *scope* of forum selection clauses. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). In diversity cases like this one, a district court must look to the choice-of-law rules of the state in which it sists to decide which substantive body of law to apply to a provision of a contract, "even when the contract contains a choice-of-law clause" as is the case here. *Id.* As determined in *Loveland* (discussed herein), the claims at issue clearly fall within the scope of the forum selection clause. Further, the "law specified in the [User Agreement]—Texas law—should control interpretation of the forum selection clause unless the choice-of-law clause itself is unenforceable in context." *Id.* at 185. The Third Circuit has already found that "courts applying Texas law have held that forum selection clauses with broad language" such as "any dispute or controversy arises between [the parties] concerning any matter relating to this Agreement [must be filed in Texas state court]" or similar language, "encompass a variety of non-contractual claims, *including statutory claims.*" *Id.* at 184, 185 (discussing cases interpreting forum-selection clauses under Texas law) (emphasis added).

th[e] [PA] website" and the "purchase of a[] product . . . through th[e] site."  Accordingly, the User Agreement and its terms, including the forum-selection clause, cover this dispute.  *See, e.g.*, *Loveland*, 2021 WL 1734800, at *6 (finding that "little explanation" was needed to determine that the action fell within the scope of the forum-selection clause when the "Complaint illustrate[d] the case ar[o]se from the Plaintiffs' use of Facebook's internet social networking platform" and when the forum-selection clause unambiguously stated "For any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook products . . . you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County" and when Facebook's Terms of Service stated "These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer (the Facebook Products or Products), except where we expressly state that separate terms (and not these) apply").

Third, enforcement of the forum-selection clause is not unreasonable under any of the factors outlined in *C.H. Robinson*.  There is no indication that PA included the forum selection clause "as a means of discouraging customers from pursuing legitimate claims"; to the contrary, PA is headquartered in Texas and "has a legitimate business interest in protecting itself from suit in all 50 states."  *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246–47 (E.D. Pa. 2007).  Further, ""it would be consistent with the public policy of Pennsylvania to enforce the forum selection clause in order to give force to the parties' agreement."  *C.H. Robinson*, 2024 WL 1363496, at *3. In addition, venue in the Southern District of Texas is appropriate because PA's Terms & Conditions also indicate that Texas law applies.  *See Feldman*, 513 F. Supp. 2d at 247 (finding that Google's forum selection clause did not violate strong public policy of the forum because "a California forum would be more appropriate because California law applie[d] to disputes under

the [parties'] Agreement").  Finally, distance from the forum or inconvenience of travel is not so "inconvenient" to the plaintiff to be "unreasonable."  *Id.*

> ii.    *Extraordinary circumstances do not weigh against enforcement of the forum-selection clause under § 1404(a).*

In determining whether "extraordinary circumstances" exist which militate against enforcement of a forum-selection clause, "a district court may consider arguments about public interest factors only" under § 1404(a), because "the private interest factors 'weigh entirely in favor of a preselected forum.'"  *Kilduff*, 2023 WL 3361187, at *2 (citation omitted).  Such "public factors" include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (quoting *Jumara*, 55 F.3d at 879–80).  "These factors must 'overwhelmingly disfavor a transfer to overcome the forum selection clause.'"  *Id.* (quoting *Alt. Marine*, 571 U.S. at 67).  Further, "[w]hen a plaintiff files an action outside of the preselected forum, the plaintiff 'bears the burden of showing the public-interest factors *overwhelmingly* disfavor a transfer."  *Id.*

Here, all six "public interest" factors are neutral or favor transfer to the Southern District of Texas.  ***First***, "because judgments rendered in one federal district may be easily enforced in another," the first factor would be neutral.  *Inters. Corp. v. Enviro, USA, Inc.*, Case No. 23-cv-2778-JMY, 2023 WL 6450511, at *3 (E.D. Pa. Oct. 2, 2023) (citing *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 410 (3d Cir. 2017).  The ***second*** factor concerning practical considerations is likewise neutral or weighs in favor of PA because there is no reason litigating this case in Texas would be any more difficult "given that physical accommodations could be made, including, but not limited to telephonic, video appearances, and virtual depositions."  *Id.* (citing *Tricome v. eBay,*

*Inc.*, Civil Action No. 09-2492, 2009 WL 3365873, at *4 (E.D. Pa. Oct. 19, 2009)).  The **third** factor also weighs in favor of transfer: the Eastern District of Pennsylvania has approximately 18% more civil cases pending than the Southern District of Texas (6,944 versus 5,656, respectively),[10] and both Districts have the same number of judicial vacancies.[11]  **Fourth**, Texas "certainly has an interest in resolving cases involving its own" citizens and businesses and the same Privacy Policy and Terms & Conditions apply to all users accessing the PA website regardless of their location; accordingly, this factor weighs in favor of transfer.  *Castle Co-Packers, LLC v. Busch Mach., Inc.*, Civil Action No. 23-459, 2023 WL 5337167, at *7 (W.D. Pa. Aug. 18, 2023); *Tricome*, 2009 WL 3365873, at *5 (finding Northern District of California had a strong interest in resolving the matter given that eBay was a California corporation that "utilize[d] the same User Agreement in its business dealing with every individual who is registered . . . to use eBay's services").  **Fifth**, this Court has found that the "public policy of this forum would support enforcement of [a] valid enforcement selection clause."  *Feldman*, 513 F. Supp. 2d at 248.  **Sixth**, and finally, "even if Pennsylvania law is ultimately applicable to the claims and defenses in this case [because both of Plaintiff's claims are violations of Pennsylvania state statutes], a transfer is still appropriate because '[f]ederal judges are frequently called upon to apply the laws of other states.'"  *Castle Co-Packers*, 2023 WL 5337167, at *7 (quoting *McLaughlin v. GlaxoSmithKline, L.L.C.*, Civil Action No. 12–3272, 2012 WL 4932016, at *8 (E.D. Pa. Oct. 17, 2012)).  Accordingly, the public interest factors under § 1404(a) weight in favor of enforcement of the valid forum-selection clause and the case should dismissed or transferred.

---

[10] *Table C-U.S. District Courts-Civil Federal Judicial Caseload Statistics (March 31, 2023)*, U.S. Courts, https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2023/03/31 (last visited Apr. 28, 2024).
[11] *Current Judicial Vacancies*, U.S. Courts, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited Apr. 28, 2024).

**C.**     **Plaintiff's Complaint Should Be Dismissed For Lack of Standing Because Plaintiff Fails to Plead A Cognizable "Injury-In-Fact."**

Plaintiff fails to allege that he suffered a concrete injury that satisfies the standing requirements of Article III of the U.S. Constitution, requiring dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

Federal courts "do not adjudicate hypothetical or abstract disputes" nor do they "possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Thus, "[p]laintiffs seeking to vindicate their rights in federal court must therefore satisfy Article III's standing requirements," which requires that they show they suffered "(1) an injury in fact that is concrete and particularized, (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable judicial decision." *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 141 (3d Cir. 2024). At the pleading stage, plaintiffs must "clearly allege facts demonstrating" each element of Article III standing, including a concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (cleaned up).

Here, Plaintiff alleges violations of his rights WESCA and the UFA. [*See generally* Compl.] The U.S. Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 414. That is, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*; *see also Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 113–17 (3d Cir. 2019) ("[B]are procedural violation" of statute "[does] not create Article III standing[.]"); *Massie v. Gen. Motors LLC*, No. 21-787, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (hereinafter "*Massie II*") ("Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue . . . in

federal court.").  Post-*TransUnion*, courts analyzing the "concrete injury" requirement "should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."  *TransUnion*, 594 U.S. at 424. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury."  *Id.*

This Court's decision in *In re BPS* and the Third Circuit's subsequent decision in *Barclift* are directly on point and require dismissal because Plaintiff does not have standing to maintain this lawsuit.  In December 2023, this Court in *In re BPS* dismissed claims for violation of WESCA and the UFA brought by a Pennsylvania resident, Plaintiff David Irvin, for lack of standing.  2023 WL 8458245, a *14, *17.  Just like Plaintiff here, Irvin alleged that he had purchased a firearm from Cabela's, LLC, through its website and that Cabela's had contracted with a third party (there, session replay) to collect and use Irvin's information for marketing and advertising purposes.  *Id.* at *2.  In finding that Irvin failed to state an injury-in-fact under either WESCA or the UFA, the Court, relying on *TransUnion*, found that Irvin "failed to allege a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit."  *Id.* at *8.

Judge Kearney first concluded that Irvin failed to "adequately plead [he had] suffered a concrete harm from [his] website visits" for purposes of WESCA when he alleged that Bass and Cabela's "assisted Facebook in intercepting communications which contained '[his] name, address, Facebook ID, [and] gun he purchased, among other items."  *Id.* at *14.  In so finding, the Court first analogized the "harms" at issue to the common law privacy claims of intrusion upon seclusion and public disclosure of private facts, both of which require "interception or disclosure of private personal information in a highly offensive manner."  *Id.* at *12.  The Court concluded that where a plaintiff alleges disclosure of only "basic contact" and other non-private information,

such information does not constitute "highly sensitive" or "private" personal information that would be necessary to state an injury for violation of the above common law claims. *Id.* at *11. Instead, a plaintiff must allege the defendant "captured non-anonymized and unencrypted highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards" to state an injury-in-fact. *Id.* at *6, *16. Applied to Irvin, the Court found that, although Irvin claimed he purchased a gun and plausibly entered some of his personal information on the website, he failed to allege he entered de-anonymized and unencrypted highly sensitive personal information such as financial data from banks or credit cards or medical diagnosis information and therefore did not suffer a concrete injury-in-fact. *Id.* at *15–16.

Judge Kearney also found that Irvin did not have standing "to sue under the nondisclosure mandates in the [UFA]" when he claimed that defendants disclosed information about the gun he purchased to Facebook without his consent for the substantially the same reasons. *Id.* at *17, *18. Analogizing the alleged "harm" Plaintiff suffered due to the UFA violation to the common law claims of public disclosure of private facts and intrusion upon seclusion, the Court concluded first that public disclosure of private facts was not a proper analogue because only one party— Facebook—received Irvin's information. *Id.* at *19. Thus, Irvin failed to allege "widespread disclosure or disclosure 'to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* (citation omitted). The Court also concluded that Irvin's alleged harm was not sufficiently analogous to "intrusion upon seclusion" because "disclosure of Facebook Website User Irvin's Facebook ID to *Facebook*" was not intrusive; disclosure of a gun purchase is "not the highly offensive or objectionable conduct to which liability can attach" because when a shopper purchases a gun in person, other shoppers and store employees can "observe" his gun purchase; and as was the case for his WESCA violation, the information

allegedly disclosed to Facebook was not "sufficiently" private to confer standing.  *Id.* at *19–20.

Subsequently, in February 2024, the Third Circuit in *Barclift* applied *TransUnion*'s "concrete injury"/"close relationship" test in a case where plaintiff alleged disclosure of personal information, including name, address, debt balance, and other information to a third party in alleged violation of the Fair Debt Collection Practices Act, and concluded that plaintiff did not have standing because she could not "demonstrate that the injury resulting from [defendant]'s communication of her personal information to a third-party mailing vendor b[ore] a close relationship to a harm traditionally recognized by American courts."  93 F.4th at 140, 145. Analogizing plaintiff's alleged harm to the common law claim of "public disclosure of private information," the Third Circuit concluded that plaintiff had not shown "disclosure to the public" as required to state the common law claim.  *Id.* at 146.  Instead, the Third Circuit noted that "the harm from disclosures that remain functionally internal are not closely related to those stemming from public ones."  *Id.*  Said differently, "[w]hen the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure."  *Id.*  Thus, the Third Circuit held that that plaintiff lacked a concrete injury for standing because "[i]nformation transmission that neither travels beyond a private intermediary nor creates a sufficient likelihood of external dissemination cannot compare to a traditionally recognized harm that depends on the humiliating effects of public disclosure."  *Id.* at 148.

Here, just like in *In re BPS* and *Barclift*, Plaintiff fails to allege a concrete injury-in-fact for standing to maintain either his WESCA or UFA violations.  First, the information Plaintiff alleges was "disclosed" was, at most, "basic contact information"—he does not allege that PA disclosed, or Listrak "intercepted," de-anonymized, unencrypted, sensitive credit card or financial

information or medical information.  In fact, *any* information that would have been "disclosed" or "intercepted" here would have been non-sensitive information.  [*See* Ex. E, ¶ 4 ("PA has never enabled the Javascript Code on the Website to permit Listrak to collect de-anonymized sensitive personally identifying information about PA customers, including 'sensitive information' like credit card information, financial account information, medical information, or the like.  No sensitive personal information is available to Listrak."].)  Second, Plaintiff has demonstrated that he does not consider the information at issue in this lawsuit "sensitive" because he has voluntarily disclosed publicly and in writing in his Complaint the categories of information he claims should be kept private: his name and the exact details of his gun purchase, *i.e.*, that he bought a "Seekins Precision SP10 6.5 Creedmoor Semi-Automatic AR-10 Rifle" in May 2023.  [Compl., ¶¶ 6, 43.]  Third, the mere knowledge of a gun purchase, including the type of gun one purchased, is likewise not sufficiently sensitive or highly offensive to confer standing under these circumstances, as it is no different than Plaintiff purchasing a gun from PA's brick-and-mortar store while being observed by other PA employees and customers.  Fourth, any disclosure to Listrak of *any* information is not sufficiently "public" to satisfy the "publicity" requirements of any of the common law privacy analogues that may be applicable under the circumstances.  Fifth, disclosure to Listrak of *any* information is "functionally internally" and does constitute widespread publication, nor does Plaintiff allege widespread disclosure is substantially certain to occur.  [*See* Ex. E, ¶¶ 3, 5.]  And finally, Plaintiff does not allege any harm whatsoever stemming from any conduct at issue: he does not allege embarrassment, shame, anxiety, fear, etc.  Indeed, he alleges no "harm" at all.  In sum, Plaintiff does not allege anything other than a purported violation of WESCA and the UFA.  Plaintiff cannot manufacture a concrete injury by alleging that he was injured solely by PA's alleged violation of a statute.  The Court should dismiss Plaintiff's Complaint for lack of Article

III standing. *See Smidga v. Spirit Airlines, Inc.*, 2:22-cv-1578-MJH, 2:23-cv-00784-MJH, 2:23-cv-00895-MJH, 2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024) (following *In re BPS* and other cases and finding plaintiffs failed to state injuries-in-fact when they "did not specifically allege the entry of their credit card information," they failed to allege "specific" sensitive personal information was collected via session replay beyond "boilerplate averments," and when Spirit "factually challenged" the Complaint via declaration stating that "Session Replay Software, operating on Spirit's website, does not collect personal identifying information from website visitors").

### D.   <u>Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.</u>

Even if this Court had personal jurisdiction over PA (it does not); venue was proper in this District (it is not); and Plaintiff had asserted a concrete, cognizable "injury-in-fact" (he has not), this Court should dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6) because the alleged conduct at issue does not violate WESCA or the UFA.

#### 1.    Plaintiff's claim for violation of WESCA should be dismissed.

WESCA prohibits the intentional interception, use, or disclosure of a "wire, electronic, or oral communication" without prior consent. *See* 18 Pa. Cons. Stat. §§ 5703, 5704; *Cook v. GameStop, Inc.*, 2:22-cv-1292, 2023 WL 5529772, at *6 (W.D. Pa. Aug. 28, 2023). Here, Plaintiff alleges that PA unlawfully "procured" Listrak, by hosting of Listrak code on PA's website, "to track and intercept Plaintiff's and other Class Members' internet communications while navigating [PA's] website" without consent. [Compl., ¶¶ 8, 16, 36.] Plaintiff's claim here fails because Plaintiff fails to show interactions with PA's website constituted "electronic communications" whose "contents" were unlawfully "intercepted" by a "device" within the meaning and scope of WESCA. *See* 18 Pa. Cons. Stat. §§ 5702, 5703, 5725; *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022). Therefore, Plaintiff does not state a claim for a violation of WESCA.

>    i.    *Plaintiff fails to allege interception of the "contents" of an "electronic communication."*

Plaintiff's allegations do not establish the interception of the "contents" of an "electronic communication." *See* 18 Pa. Cons. Stat. § 5702 (an "intercept" under WESCA is the "[a]ural or other acquisition of the *contents* of" Plaintiff's communications) (emphasis added). WESCA defines "contents" to mean "information concerning the substance, purport, or meaning of [a] communication." *Id*. In the wiretapping and broader electronic communications context, courts distinguish between "contents"—which are "the intended message conveyed by the communication"—and "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.,* 750 F.3d 1098, 1106–07 (9th Cir. 2014); *accord In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135–39 (3d Cir. 2015).

Plaintiff here alleges in a conclusory fashion that PA assisted Listrak in tracking his "personally identifiable information" and that PA is *capable of* collecting information about a consumer's purchases, including the item being purchased, whether the item has been added to the checkout cart, and whether the viewed the item in the consumer's cart on PA's website. [Compl., ¶¶ 8–15.] Critically though, Plaintiff only identifies the following specific information *about him* as potentially being intercepted: (1) his email address; and (2) the type of gun he purchased. [*Id.* at ¶ 44 ("Defendant disclosed to Listrak information that Plaintiff provided to it in connection with his purchase of this firearm. Specifically, Defendant disclosed Plaintiff's email address, the type of gun that he purchased, among other items.").] Further, PA has already indicated that it has not enabled Listrak code to collect and receive de-anonymized personally identifying information from customers, including "sensitive information," such as credit card information, financial account information, or medical information, etc. [Ex. E, ¶ 4.] Other courts have routinely held

that the data Plaintiff claims PA acquired without his consent are not "contents" of a communication. *See, e.g.*, *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (stating that "'mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff' [allegedly] intercepted by Spirit when she was browsing the Website . . . is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message") (collecting cases); *In re Zynga*, 750 F.3d at 1107 (holding that URLs "function[] like an 'address,'" not "contents" of a communication, *even if they disclose that a person viewed the "page of a gay support group*") (emphasis added); *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) ("[A] Facebook user's unique identification information" and "the identity of the webpages that the users visited" do not qualify as "contents" of a "communication"); *see also Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (similar).

In fact, a Pennsylvania federal court recently dismissed a WESCA claim under similar facts in *Cook v. GameStop, Inc.* There, Cook visited GameStop's public website and its subpages, which used software code to track and analyze the user interactions with the website. 2023 WL 5529772, at *1. The court noted, "determining whether a plaintiff has adequately pled a violation of the statute often comes down to deciding whether the acquired information can best be characterized as either 'record information' or 'the message conveyed by the communication.'" *Id.* at *17. Like the instant case, Cook's WESCA claim lacked sufficient detail about the contents of her communications and merely described the capabilities of the software at issue. *See id.* at *7–10. And like this case, the *Cook* complaint "lack[ed] critical necessary details for the Court's analysis

of the type of information allegedly captured by GameStop's Session Replay Code." *Id.* at *7.

It is not enough for Plaintiff to allege "the potential capabilities of the [Listrak code]." *Id.* Plaintiff must allege that PA in fact "harnessed the capabilities []he describes, and it had the result of capturing the contents of specific communications." *Id.* He fails to do so. His threadbare allegations regarding how Listrak code *could operate* are legally insufficient. *See Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (finding allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers were conclusory in nature and not entitled to a presumption of truth); *Robinson v. Fam. Dollar Inc*, 679 F. App'x 126, 132 (3d Cir. 2017) (affirming the dismissal of plaintiff's claims because the plaintiff failed to allege specific facts sufficient to raise a right to relief "above a speculative level"); *Jaye v. Oak Knoll Vill. Condo. Owners Ass'n, Inc.*, 751 F. App'x 293, 298 (3d Cir. 2018) (affirming the dismissal of plaintiff's claims because she simply "repeated the elements" of her claims). *See also Cousin v. Sharp Healthcare,* 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (dismissal warranted when plaintiffs "allege[d] in a conclusory manner that Defendant disclosed to Meta their personal, confidential, and sensitive medical information; communications and messages with doctors; medical test results; payment information; and, password reset information" because "the[] allegations [wer]e conclusory and devoid of any factual support" and because the plaintiffs "failed to state what information they each provided to Defendant, via their browsing activity, that was subsequently disclosed to Meta"). Because Plaintiff has failed to plausibly allege an interception of the contents of any message, his WESCA claim should be dismissed.[12]

---

[12] PA recognizes that this Court, at the "early juncture" of a Rule 12(b)(6) motion to dismiss, was "reluctant to find, as a matter of law, that . . . interception of . . . 'browsing activities' could not constitute a violation of [WESCA]" because whether or not such activities "lacked the 'contents' that are the hallmark of illegal 'interceptions' under [WESCA]—[could] be borne out after discovery." *Vonbergen*, 2023 WL 8569004, at *10. This Court should find otherwise under these circumstances.

ii.    *Listrak code is not a "device."*

Plaintiff's WESCA claim should also be dismissed because Listrak's JavaScript code is not a "device" that "intercepts" communications. *See* 18 Pa. Cons. Stat. § 5702. An "interception" requires "acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other *device*." *Id.* (emphasis added). "WESCA's use of 'intercept' thus reduces to acquiring certain communications using a device." *Popa*, 52 F.4th at 126. "Device," in turn, means "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic, or oral communication" other than things like telephone or telegraph instruments, hearing aids, and call-center equipment used for training or quality control. *See* 18 Pa. Cons. Stat. § 5702.

PA is aware of no Pennsylvania court that has extended the meaning of "device" under WESCA to include Listrak or JavaScript code. Further, the Western District of Pennsylvania in *Popa v. Harriet Carter Gifts, Inc.* ("*Popa I*") did not outright reject defendants' argument that JavaScript code was not a "device," and instead stated that "deeper factual exploration" was required before the issue could be decided at the motion to dismiss stage. 426 F. Supp. 3d 108, 116 (W.D. Pa. 2019). The *Popa I* court further stated that statutory definition of "device" was not "limitless." *Id.* at 117.[13]    Notwithstanding this Court's refusal to find that "session replay software" was not a device under WESCA in the absence of a more fulsome record, *Vonbergen*, 2023 WL 8569004, at *10, PA urges the Court to reconsider its conclusion under the circumstances and side with those courts that have so limited the statutory definition of "device" in analogous cases. *See, e.g.*, *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio Jun.

---

[13] The Third Circuit in *Popa* assumed without deciding that the JavaScript code at issue in that case could qualify as a device because the issue was not before it on appeal. 52 F.4th at 131 n.8.

23, 2008); *accord Jacome*, 2021 WL 3087860, at *5 ("[C]ourts have held that software, email servers, and drives do not constitute devices under the wiretapping statutes."); *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-1029, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) ("The drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act."); *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. CV SAG-18-2315, 2019 WL 2233535, at *21 (D. Md. May 23, 2019) (a "server is not a 'device' used for interception as defined by the Wiretap Act"); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (similar).

       iii.       *Plaintiff's WESCA claim should be dismissed because he consented to the conduct at issue.*

An exception exists for violation of WESCA where "all parties to the communication have given prior consent to [an] interception." 18 Pa. Cons. Stat. § 5704(4); *see also Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020). Under WESCA, "prior consent" does not require "actual knowledge" that a person is being recorded." *Popa*, 52 F.4th at 132. In the context of online agreements, even if there is no evidence of "actual knowledge" of the agreement at issue, courts will enforce the terms of online agreement if "a reasonably prudent user [would have been] on inquiry notice of its terms." *Popa I*, 426 F. Supp. 3d at 118.

As stated herein, Plaintiff admits he knew of the existence of the Privacy Policy in his Complaint, [*see* Compl., ¶ 21], and the Privacy Policy explicitly references and directs users to the Terms & Conditions, both in the text of the Privacy Policy and hyperlinked at the bottom of Privacy Policy webpage. Plaintiff also admits that he purchased a gun from the PA website, at which point he would have been advised that "By using our website, you agree to our Privacy Policy and Terms & Conditions" when checking out as a guest or creating an account for the first time. The terms of the Privacy Policy also explicitly provide that PA "do[es] not sell, trade, or otherwise transfer

to outside parties your personally identifiable information unless we provide you with advance notice, except as described below . . . However, non-personally identifiable visitor information may be provided to other parties for marketing, advertising, or other uses." [*See* Exhibit A.] The Privacy Policy further provides that "[t]he term 'outside parties' . . . does not include website hosting partners and other parties who *assist us in operating our website*, *conducting our business, or servicing you, so long as those parties agree to keep this information confidential*." [*Id.* (emphasis added); *see also* Ex. E, ¶ 3.] Finally, the Privacy Policy explicitly states that "By using our site, you consent to our privacy policy." [Ex. A.] Accordingly, Plaintiff would have been aware that certain of his information, including personal information, would have been potentially communicated to an "outside party," *i.e.*, Listrak, and by using the website, including coming back to the PA website and making multiple purchases, he would have consented to the sharing of the alleged information at issue.

iv.      *Plaintiff's WESCA claim should be dismissed because no violation of WESCA occurred because Listrak was an "agent" or extension of PA.*

Plaintiff's claim that PA "procured" a third-party to intercept his communications also fails because Listrak was effectively operating as an "agent" or "extension" of PA with whom Plaintiff knew he was communicating, and therefore, all parties were aware of and consented to the alleged communications at issue. In other words, Listrak, through its relationship with PA, was for all intents and purposes an extension of PA, the party with whom Plaintiff intended to communicate.

An agency relationship exists under Pennsylvania law when a party shows "(1) there was a manifestation by the principal that the agent would act for it; (2) the agent accepted such an undertaking; and (3) the principal retained control of the endeavor." *Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 3d 435, 472 (E.D. Pa. 2018) (quoting *Castle Cheese, Inc. v. MS Produce, Inc.*, No. CIV.A 04-878, 2008 WL 4372856, at *8 (W.D. Pa. Sept. 19, 2008)); *see, e.g., Fridline*

*v. Integrity Veh. Grp., Inc.*, No. 4:23-CV-01194, 2023 WL 7170642, at *3 (M.D. Pa. Oct. 31, 2023) (evaluating case law analyzing agency relationship in TCPA actions, with "[o]ne line of cases generally find[ing] that a telemarketing contract for one company to call and solicit potential customers on another company's behalf plausibly alleges an agency relationship").

Here, Plaintiff alleges that PA hired Listrak to collect and store information on PA's behalf for advertising purposes.  [*See* Compl., ¶ 19.]  As PA's Privacy Policy states, third parties like "website hosting partners and other parties who assist us in operating our website, conducting our business, or servicing [customers]" are not considered "outside parties" for purposes of the sharing of information—they are considered within the PA relationship.  [*See* Ex. E, ¶ 3.]  Further, PA, through its contract, chooses the services it wishes Listrak to perform, and all such services are done for PA, may be used only by PA (and not any other third-party), and do not leave PA's sole control.  [*Id.* at ¶¶ 2 & 3, 5.]  PA also does not authorize or permit any "aggregation" or "cross-device" or "cross-site" identification to identify new customers.  [*Id.* at ¶ 6.]  In short, PA's relationship with Listrak is almost like that of an employee: PA contracted with Listrak to provide certain web based analytics for PA, at PA's discretion, and within PA's control.  If so, Plaintiff's communications were functionally with PA via an "extension" of PA and not with any other third party while he navigated on the PA website and when he purchased a firearm.  Thus, no third unknown third party "eavesdropped" on or illegally wiretapped his communications.

Decisions from California federal courts considering whether website operators violated California's anti-wiretapping statute by hiring third-party session replay providers are instructive.  Under the California Invasion of Privacy Act ("CIPA"), a person is liable if he "aids, agrees with, employs, or conspires with any person or persons to unlawfully" intercept electronic communications.  *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1064 (C.D. Cal. 2023).  As part

of the nationwide wave of cases regarding session replay software, litigants have argued that website operators violate CIPA when they use third-party software providers for session replay.

California federal courts have held that website operators are not liable under CIPA for using third parties to implement session replay software because such third parties are a mere "extension" of the website operator and not a "third-party eavesdropper." *Id.* at 1067–68. In doing so, the courts looked to whether the plaintiff alleged that the third party used the intercepted communications for its own purposes unrelated to the website (i.e., "aggregation of data for resale"). *Id.* at 1068. Where, as here, plaintiffs allege that a third party merely implemented JavaScript code for a website operator's use, the courts have found no CIPA violation. *Id.* (dismissing CIPA claim; "the question boils down to whether [the third-party vendor] was an independent third party hired to eavesdrop on [Defendant's] communications, or whether [the third-party vendor's] software was merely a tool that [Defendant] used to record its own communications with plaintiff"); *Williams v. What if Holdings, LLC*, No. C 22-03780, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (dismissing CIPA claim after finding "[t]hat recorded videos are hosted and accessed on ActiveProspect's servers is part of how the software tool functions, and plaintiff makes no allegation that ActiveProspect or its TrustedForm product affirmatively engages with that data in any way other than to store it"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool—like the tape recorder in Rogers—that allows Noom to record and analyze its own data in aid of Noom's business. It is not a third-party eavesdropper.").

This Court should apply the same analysis here and find Listrak was effectively an "agent" or "extension" of PA. As such, no additional, unknown third party did or could have illegally intercepted Plaintiff's communications without his consent.

### 2. Plaintiff's claim for violation of the UFA should be dismissed.

Under the UFA § 6111(i), "[a]ll information provided by [a] potential purchaser [of a firearm], including, but not limited to the potential purchaser['s] . . . name or identity, furnished by a potential purchaser . . . shall be confidential and not subject to public disclosure."

Plaintiff's claim here fails because PA did not furnish Plaintiff's "name or identity" or "email address [or] the type of gun that [Plaintiff] purchased" to anyone not otherwise *authorized* to receive that information by the applicant. Specifically, at least one Pennsylvania court has concluded that, to state a violation of § 6111(i) of the UFA, a plaintiff must allege that a "licensed [arms] dealer" "reveal[ed] an 'applicant's name or identity' to a person not (1) authorized to receive such information by statute; (2) involved in the operation or management of the sheriff's office; (3) representing a law enforcement or criminal justice agency; or (4) otherwise authorized by an applicant." *Doe v. Franklin Cty.*, 139 A.3d 296, 307 (Pa. Commw. Ct. 2016) *reversed on other grounds by Doe v. Franklin Cty.*, 174 A.3d 593 (Pa. 2017). Here, PA's Privacy Policy specifically states that it may disclose an online user's personally identifiable information to parties like Listrak. [*See* Ex. A.] The Privacy Policy also provides that, "[b]y using our site, you consent to [PA's] privacy policy." [*Id.*] As explained above, Plaintiff would have been exposed to these terms on numerous occasions. [Ex. D, ¶ 7.] Accordingly, Plaintiff, by using the PA website and purchasing a firearm, consented to any sharing of this information with Listrak. But even if he did not, Listrak does not receive any de-anonymized, sensitive information about individual purchasers on the PA website. [Ex. E, ¶ 4.] Further, as an "agent" or "extension" of PA, Listrak

would have been "otherwise authorized" by Plaintiff to receive information about his gun purchase. Plaintiff's claim for violation of the UFA should therefore be dismissed.

## V.    __CONCLUSION__

For the reasons set forth above, the Court should dismiss Plaintiff's Complaint. If the Court finds dismissal is unwarranted, the Court should transfer Plaintiff's Complaint to U.S. District Court for the Southern District of Texas.

Dated: May 1, 2024                          Respectfully submitted,


                                            **BAKER & HOSTETLER LLP**

                                            By: _/s/ Sarah A. Ballard_____
                                            Sarah A. Ballard (PA Bar No. 327879)
                                            1801 California Street, Suite 4400
                                            Denver, CO  80202
                                            Tel.: (303) 861-0600
                                            Email: sballard@bakerlaw.com

                                            Matthew D. Pearson (_pro hac vice_
                                            forthcoming)
                                            600 Anton Boulevard, Suite 900
                                            Costa Mesa, CA  92626
                                            Tel: (714) 754-6600
                                            Email: mpearson@bakerlaw.com

                                            _Counsel for Defendant Primary Arms,_
                                            _LLC_

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 1, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Sarah A. Ballard*
Sarah A. Ballard

*Counsel for Primary Arms, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH MCQUEEN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. 2:24-cv-00725-GEKP |
| v. | |
| PRIMARY ARMS, LLC, | |
| Defendant. | |

**[PROPOSED] ORDER**

**AND NOW**, this _____ day of _____, 2024, upon consideration of Defendant Primary Arms, LLC's Motion to Dismiss Plaintiff's Complaint, and for good cause shown, it is hereby **ORDERED** that the motion is **GRANTED**, and Plaintiff's Complaint is dismissed against Defendant **WITH PREJUDICE**.

_____
Hon. Gene E.K. Pratter