IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH MCQUEEN**, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**PRIMARY ARMS, LLC**,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 24-725-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                                                         June 6, 2024

Plaintiff Kenneth McQueen accuses Defendant Primary Arms of surreptitiously collecting information about visitors to its website in violation of Pennsylvania's Wiretapping Act and Uniform Firearms Act. However, there is a dispute as to whether McQueen has standing to pursue this lawsuit  Because that issue is on appeal before the Third Circuit Court of Appeals in a similar action, Primary Arms has moved to stay this case pending the outcome of that appeal. For the reasons discussed below, the Court grants Primary Arms' motion.

I.     BACKGROUND

Mr. McQueen brings this putative class action against Primary Arms "on behalf of all Pennsylvania residents who have purchased firearms from www.primaryarms.com." (Doc. No. 15 at ¶ 1.) Primary Arms' website uses code from a company called Listrak, which is "a customer engagement platform that allows companies . . . to build customer profiles." (*Id.* ¶ 11.) Listrak's code intercepts information about consumers' visits to Primary Arms' website, matches that information to Listrak's consumer profiles, and uses those consumer profiles for advertising

purposes. (*Id.* ¶¶ 11–12, 16–19.) Listrak's code allegedly collects information about both website visitors' "personally identifiable information" ("PII") and the items visitors purchase. (*Id.* ¶¶ 13–15.) Mr. McQueen argues that this violates the Pennsylvania Wiretapping Act and the confidentiality provisions of Pennsylvania's Uniform Firearms Act.

Primary Arms asks the Court to stay this action pending the outcome of an appeal from the Honorable Mark A. Kearney's dismissal of a similar action, namely *In re BPS Direct, LLC, and Cabela's, LLC, Wiretapping*, No. 23-md-3074, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023). The plaintiffs in the multidistrict *BPS Direct* litigation averred, among other things, that Bass Pro Shops and Cabela's violated the Pennsylvania Wiretapping Act by using code on their websites to collect website visitors' information, including personally identifying information and items purchased. *See BPS Direct*, 2023 WL 8458245, at *3–4. The central holding of Judge Kearney's opinion was that the plaintiffs lacked Article III standing because they failed to allege the disclosure of "highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards." *Id.* at *1.[1] Judge Kearney found that there was no concrete injury for standing purposes where the plaintiffs merely alleged that the defendants' websites captured their "shopping activity" and "basic personal information," neither of which is "sufficiently private to confer standing." *See id.* at *12–14. Moreover, Judge Kearney considered the disclosure of a Pennsylvania plaintiff's gun purchase to Facebook, finding that "the information Bass [Pro Shops] and Cabela's allegedly disclosed to Facebook—name,

---

[1] Although Judge Kearney dismissed some plaintiffs' claims with prejudice and others without prejudice, he consistently applied this central holding to all classes of plaintiffs. *Compare BPS Direct*, 2023 WL 8458245, at *1 (dismissing with prejudice claims of "website users who cannot plead after two attempts disclosing personal credit card, financial, bank account or medical information"), *with id.* at *6 (granting some plaintiffs leave to amend "if they can truthfully allege [the defendants] captured their highly sensitive personal information such as medical diagnosis information or financial data from banks or credit cards").

address, Facebook ID, and gun purchase—is not sufficiently private to confer standing." *Id.* at *19.

The plaintiffs in *BPS Direct* appealed Judge Kearney's dismissal. The appellants describe the question presented by that appeal as follows:

> Do plaintiffs suffer a concrete injury-in-fact when their electronic communications with a website operator are intercepted by a third party without their consent, in violation of federal and state wiretapping acts, which protect against privacy harms that are similar in character to harms traditionally and historically recognized at common law?

Appellant's Br. 2, No. 23-3235, Doc. No. 20 (3d Cir. Mar. 18, 2024). The answer to this question is relevant to whether Mr. McQueen has standing to bring the present action. Because the outcome of the *BPS Direct* appeal is very likely to have a substantial and possibly dispositive impact upon this case, the Court grants Primary Arms' motion to stay.

**II.     LEGAL STANDARD**

The Court "has broad power to stay proceedings" and "may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Frey v. Frontier Utils. Ne. LLC*, No. 19-2372-KSM, 2020 WL 12697469, at *1 (E.D. Pa. Apr. 13, 2020) (quoting *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO,* 544 F.2d 1207, 1215 (3d Cir. 1976)). Thus, "[w]here a stay is sought pending resolution of purportedly related litigation," the Court considers "whether resolution of the related litigation would substantially impact or otherwise render moot the present action." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014). Additionally, when the Court decides whether to stay an action, it "must weigh the competing interests of and possible harms to the parties." *Frey*, 2020 WL 12697469, at *1 (quoting *Stokes v. RealPage, Inc.*, No. 15-1520, 2016 WL 9711699, at *1 n.1 (E.D. Pa. Jan. 25, 2016)). The Court must examine "whether the proposed stay would

prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed[,] and whether granting the stay would further the interest of judicial economy." *Id.* (quoting *Stokes*, 2016 WL 9711699, at *1).

### III.    ANALYSIS

#### A.    Related Litigation

The Court begins by considering whether the *BPS Direct* appeal will "substantially impact or otherwise render moot" Mr. McQueen's action. *Akishev*, 23 F. Supp. 3d at 446. After carefully reviewing Judge Kearney's opinion in *BPS Direct*, the Court concludes it is likely that the outcome of the plaintiffs' appeal in that case will have a significant, and possibly dispositive, impact on the standing analysis in the present action.

To determine whether a plaintiff has adequately pled the injury-in-fact requirement of standing, the Court is required to analyze whether the plaintiff's alleged harm bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)). Judge Kearney found that the *BPS Direct* plaintiffs lacked standing when they merely alleged that identifying information and purchases were disclosed to a third party because these disclosures were not analogous to the harms recognized by the torts of public disclosure of private information or intrusion upon seclusion. *See BPS Direct*, 2023 WL 8458245, at *18–19. Mr. McQueen similarly alleges that he was injured when Primary Arms disclosed identifying information and purchases to third-party Listrak. If the Third Circuit Court of Appeals finds, as Judge Kearney did, that the alleged disclosure of identifying information and

4

purchases to a third party is not a harm that has traditionally provided a basis for suit, the Court will be bound to apply that conclusion to Mr. McQueen.[2]

Mr. McQueen attempts to distinguish *BPS Direct* in two ways. First, he notes that the appealing plaintiffs in *BPS Direct* did not bring a claim under the Uniform Firearms Act as he does.  (Doc. No. 14 at 1–2.)  Second, he emphasizes that the appealing plaintiffs in *BPS Direct* challenge the defendants' use of "session replay software," whereas he challenges Primary Arms' use of a different technology—the "advertising pixel."  (*Id.* at 1.)[3]  However, these distinctions are irrelevant to the standing issues presented by this case because neither has anything to do with the *harm* allegedly suffered by the plaintiffs in *BPS Direct*, which appears to be identical to the harm allegedly suffered by Mr. McQueen.  The Supreme Court has explained that a statute—here the Uniform Firearms Act—cannot unilaterally create a harm sufficient to confer standing.  *See TransUnion*, 594 U.S. at 426 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]").  And

---

[2] The Court is aware that the Honorable William S. Stickman of the Western District of Pennsylvania recently found that a plaintiff alleging the same injuries as Mr. McQueen did have standing.  *See Petris v. Sportsman's Warehouse, Inc.*, No. 2:23-cv-1867, 2024 WL 2817530 (E.D. Pa. June 3, 2024).  Instead of relying on the torts of public disclosure of private information or intrusion upon seclusion, Judge Stickman found that the plaintiff's harms were "more analogous to the right to privacy in communications embodied in the common law" and later "supplanted by federal and state statutes," including the Pennsylvania Wiretapping Act. *Id.* at *6.  The fact that Judge Stickman came out the opposite of Judge Kearney on standing suggests that a stay is appropriate in this case.  Whether the Third Circuit Court of Appeals agrees with either (or neither) judge, the appellate court's guidance on this emerging area of the law will almost certainly substantially impact the standing analysis in the present case.

[3] Mr. McQueen emphasizes that the *BPS Direct* plaintiff who challenged advertising pixels did not join the appeal and instead elected to pursue his claim in state court.  (Doc. No. 14 at 1.)  The decision to pursue claims in state court is consistent with the proposition that the *BPS Direct* plaintiff who is most similarly situated to Mr. McQueen lacked standing to sue in federal court.  *See TransUnion*, 594 U.S. at 459 n.9 (Thomas, J., dissenting) ("The Court does not prohibit Congress from creating statutory rights for consumers; it simply holds that federal courts lack jurisdiction to hear some of these cases.  That combination may leave state courts . . . as the sole forum for such cases[.]").

whether the alleged harm is caused by session replay software, advertising pixels, or any other technique for collecting data about visitors to a website, the alleged *harm* remains the same, and it is the nature of that harm that guides the Court's inquiry into whether the plaintiff has pled an injury-in-fact. *See id.* at 417 ("No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]"). Thus, Mr. McQueen's attempts to distinguish *BPS Direct* are unavailing.

The *BPS Direct* appeal is highly likely to substantially impact, and may be dispositive of, Mr. McQueen's suit. This weighs heavily in favor of granting Primary Arms' motion to stay.

### B. Additional Stay Factors

The Court next weighs "the competing interests of and possible harms to the parties." *Frey*, 2020 WL 12697469, at *1 (quoting *Stokes*, 2016 WL 9711699, at *1 n.1). Specifically, the Court considers whether Mr. McQueen will be prejudiced by a stay, whether Primary Arms would suffer hardship by denying the stay, and whether a stay would promote judicial economy. *See id.* (quoting *Stokes*, 2016 WL 9711699, at *1). The Court finds that these factors also weigh in favor of granting a stay.

Mr. McQueen's sole argument for prejudice is that "discoverable documents may be lost, memories will fade, and witnesses may become unavailable." (Doc. No. 14 at 4.) However, Primary Arms and Listrak are both under litigation holds. (Doc. No. 16 at 4.) And, as Primary Arms argues, because Mr. McQueen's suit just began in February 2024, and the plaintiff-appellants in *BPS Direct* filed their brief in the Third Circuit Court of Appeals in March 2024,

any delay would likely be minimal.[4]  Although there is some indeterminacy about how long *BPS Direct* will be pending at the Third Circuit, mere delay does not necessarily create prejudice.  *See Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, No. 09-2561, 2010 WL 11474403, at *1 n.1 (E.D. Pa. June 9, 2010) (finding no prejudice where "Plaintiff has advanced no prejudice argument other than delay in pursuing the suit.").  The Court finds with the litigation holds in place, any delay pending resolution of this appeal does not create prejudice and this factor weighs in favor of granting a stay.

In addition, it would be a hardship to Primary Arms to be required to continue litigating a case that is on questionable standing grounds.  *See Stokes*, 2016 WL 9711699, at *1 ("Defendant would suffer a hardship if forced to expend significant resources in litigating this case, since the [standing] decision in *Spokeo* may impact the viability of this lawsuit[.]" (internal quotation marks omitted)); *Icona Opportunity Partners 1, LLC v. Certain Underwriters at Lloyds, London*, No. 22-4140, 2023 WL 2473644, at *7 (D.N.J. Mar. 13, 2023) ("The cost to a party by litigating in an uncertain legal landscape awaiting a controlling decision from another court is a hardship that supports a stay of proceedings." (internal quotation marks omitted)). Mr. McQueen's sole response to this proposition is that "the claims on appeal in [*BPS Direct*] are wholly unrelated to this case."  (Doc. No. 14 at 4.)  The Court disagrees.  As explained above, the standing issue in *BPS Direct* is similar to the standing issue in *McQueen*.  Thus, this factor weighs in favor of granting a stay.

Last, granting a stay would further the interests of judicial economy.  Without a stay, the Court and the parties would be forced to dedicate resources to litigating matters that may not

---

[4] Primary Arms neglects to mention that the Third Circuit Court of Appeals has stayed *BPS Direct* itself pending the outcome of *another* set of appeals pending in the Third Circuit Court of Appeals.  But oral argument in this set of appeals took place on April 18, 2024.

even be properly before the Court because Mr. McQueen may lack standing. *See Stokes*, 2016 WL 9711699, at *1 n.1 ("[T]he interests of judicial economy would be furthered by a stay because, in the absence of a stay, the court and the parties would dedicate substantial resources to proceedings that may become unnecessary[.]"). Mr. McQueen's sole response to this proposition is that "the decision rendered by the Third Circuit in [*BPS Direct*] will offer no guidance to this Court as to *any* of the arguments raised in [Primary Arms'] motion to dismiss." (Doc. No. 14 at 5.) Again, the Court disagrees. Primary Arms' motion to dismiss, which the Court mooted in light of Mr. McQueen's amended complaint, specifically argued that Mr. McQueen lacks standing. (*See* Doc. No. 12 at 26.) As discussed above, the *BPS Direct* appeal is likely to substantially impact the Court's standing analysis in this case. This factor weighs in favor of granting a stay.

In sum, all relevant factors support granting Primary Arms' motion for a stay.

### IV.   CONCLUSION

The Court grants Primary Arms' Motion to Stay Proceedings Pending Third Circuit Appeal. An appropriate order follows.